THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COM-
PANY v. JOEL COCHRAN, as Administrator of the estate
of John M. Gibson, deceased.

43   225
81   615

1. RAILROAD COMPANY — Stockholder — Liability. A stockholder of a
railroad company is not liable for the negligence of the officers,
agents or employés of the company in the operation of its road.

2. ———— Company May Purchase Stock of Another Company. Under
the laws of Kansas, a railroad company has the lawful right to pur-
chase and hold stock of any other railroad company, the line of
whose railroad constructed, or being constructed, connects with its
own.

3. ———— Negligence of Connecting Company. Where the rights and
powers of a railroad company are those of a stockholder only, in a
connecting railroad, the railroad company, on account of being a
stockholder, is not liable for the negligence of the connecting rail-
road.

4. TICKET AGENT for Two Connecting Companies — Liability. Where
two connecting railroad companies use a station jointly, or hire one
person to discharge the duties of ticket agent for both, and such
person sells a ticket for carriage over one of the roads, the other
company is not responsible for the road over which the ticket car-
ries the passenger.

*Error from Johnson District Court.*

ON the 31st day of May, 1887, *Joel Cochran*, administrator
of the estate of John M. Gibson, deceased, filed his petition
in the district court of Johnson county, against the *Atchison,
Topeka & Santa Fé Railroad Company*, alleging that —

"The plaintiff herein complains of the defendant herein,
for that on the 30th day of May, 1887, he was duly appointed
and qualified, and letters of administration of the estate of
John M. Gibson, deceased, were issued to him by the probate
court of Johnson county, state of Kansas, as the administrator
of said estate. And plaintiff further states that the defendant
herein is now, and was at the date hereinafter first mentioned,
a railroad corporation duly organized under and by virtue of
the laws of the state of Kansas, and then owned and operated,
and now owns and operates, a railroad known as the Atchison,
Topeka & Santa Fé Railroad Company, and as such corpora-
tion and railroad company was then and is now operating and

15—43 KAS.

exclusively managing and controlling the Southern Kansas
Railway Company, a corporation duly organized under the
laws of the state of Kansas; that the Atchison, Topeka &
Santa Fé Railroad Company was then and still is a common
carrier of passengers for hire upon its trains into and through
Douglas and Johnson counties, Kansas, and that the Southern
Kansas Railway Company, so operated, managed and controlled
by the Atchison, Topeka & Santa Fé Railroad Company, was
then and still is a common carrier of passengers for hire upon
its trains of cars into and through Johnson county, Kansas,
and then ran its trains of cars over and used defendant's tracks
from Kansas City, Missouri, to Holliday, Kansas; and that
the town or village of Holliday was then a regular station
and depot, in Johnson county, Kansas, of the said Atchison,
Topeka & Santa Fé Railroad Company, on the main line of
its said railroad; and that said town or village of Holliday,
and the city of Olathe, in Johnson county, Kansas, were the
regular stations or depots on the line of the Southern Kansas
Railway.    Plaintiff further states, on the 21st day of March,
1887, the plaintiff's intestate, John M. Gibson, had ridden as
a passenger on a regular passenger train of cars of the defend-
ant company from Lawrence and Eudora, Kansas, to Holli-
day station, and that upon that day, at Holliday aforesaid,
John M. Gibson, now deceased, purchased from the defendant
company's ticket agent at Holliday depot aforesaid a ticket
entitling him to be transported on that day as a passenger
thence to Olathe, Kansas, by and upon a regular passenger
train of cars of (and then used by the defendant in the name)
the Southern Kansas Railway Company; and that in order
for John M. Gibson, now deceased, to get upon the regular
passenger train of cars so then being operated, managed and
controlled by the defendant company to be carried from Hol-
liday to Olathe aforesaid, it became and was necessary for John
M. Gibson, now deceased, to walk across the interjacent rail-
road tracks belonging to the defendant company, and then
being used by said company and said Southern Kansas Rail-
way Company with their locomotive engines and passenger
and freight trains of cars (there being no other way for the
decedent to get to and upon said train); and that while the
decedent was in the act of walking across the interjacent rail-
road tracks aforesaid, at the station and upon the invitation
of the defendant company, and for the sole purpose of board-
ing the regular passenger train of cars of the Southern Kan-
sas Railway Company as aforesaid to be carried thence to

Olathe aforesaid upon said train of cars, which was then at rest about two or three tracks remote from the platform of the defendant's depot or ticket office, which said Southern Kansas train of cars did not then come to nor did it intend to then come to the platform of the depot, and which train was then about ready to start for Olathe aforesaid, and there then being no regular crossing across the interjacent tracks and no person there to warn him of danger, the defendant company then and there, to wit, on the 21st day of March, 1887, at Holliday aforesaid, carelessly, grossly, negligently, wantonly, and recklessly, by and through its servants and employés then in charge of and operating and running one of its freight trains of cars with a locomotive engine attached thereto and in motion, on one of said interjacent tracks of the defendant company, permitted the locomotive so attached to said freight train of cars last aforesaid (without any warning of any character to the decedent of danger) to run against, strike, come in contact with, and knock down and drag in a violent and forcible manner the said John M. Gibson, now deceased, without any fault, negligence or want of care on the part of the decedent, and that by reason of said locomotive engine so striking him and so knocking him down and dragging him, the decedent was greatly bruised, cut and mangled in and about his head, back, legs, arms and body, internally, and his right leg was broken; and in consequence thereof the decedent became sick, sore, and lame, and in consequence of the injuries so received as aforesaid he was confined to his bed, and suffered much mental and bodily pain and agony, from the said 21st day of March, 1887, until on or about the 30th day of March, 1887, when he died, intestate, at Olathe, Kansas; and that the injuries all and singular so received by him as aforesaid were the cause of the death of John M. Gibson, without any fault, negligence, or want of care on the part of said decedent contributing thereto. Plaintiff further states, that John M. Gibson, now deceased, left Mary A. Cochran (née Gibson) and Elizabeth J. Adams (née Gibson) his only children him surviving, and are his only next of kin him surviving; and that by reason of the premises, all and singular, the said Mary E. Cochran and Elizabeth J. Adams, sole surviving children and sole next of kin aforesaid, have been greatly damaged by the death of John M. Gibson, now deceased, in and to the amount of $10,000, no part of which hath been paid. Plaintiff therefore as such administrator demands judgment against the defendant company herein for

the sum of $10,000 so as aforesaid sustained, with costs of suit and equitable relief."

Trial had at the September term of the court for 1887, before the court with a jury. The court among other things charged the jury as follows.:

"1. In this case the plaintiff charges the defendant company as being the owner, or operator, controller and manager of the Southern Kansas Railway Company at the time his intestate, Gibson, received his alleged injuries, and therefore I charge you that the question of liability and responsibility of the defendant company is one of fact to be determined by you from all the testimony in the case.

"2. In determining the liability of the defendant company, the true test is, what company had the control, direction and management of said Southern Kansas Railway and of the men then operating the engines and passenger trains on said road, and especially the engine and passenger train on which the plaintiff's intestate was endeavoring to take passage, if any; and in determining these questions it is your duty to take into consideration all the facts and circumstances proven by the evidence.

"3. The fact that the officials of one railroad company are officials of another railroad company, standing alone, would not make the one responsible for the negligence or default of the other; neither would the mere fact of the one railroad owning stock or bonds of another railroad company make the former company responsible for the acts of the latter; but if you find from the evidence that the Southern Kansas Railway Company, for all practical purposes, was, at the time alleged, managed, controlled and operated by the defendant company, being used as an auxiliary and a part of the defendant company's system of railroads, then and in that event the defendant company would ordinarily be responsible for the negligence, default or miscarriage of the Southern Kansas Railway Company, its agents and employés.

"4. If in fact the defendant company exercised and assumed the actual control of the management and operation of said Southern Kansas Railway at the time of the alleged injuries, it would be liable for the negligence, if any, of the men in operating and managing the engines and passenger trains of the Southern Kansas Railway Company, in failing to bring its passenger trains to the platform of the depot to

receive passengers, (if they did so fail,) even though the men were at the time engaged in the business of another company, namely, the Southern Kansas Railway Company.

"5. If the jury find that the general management of both roads is under the control of the same officials; that the boards of directors of both roads are substantially the same persons; that a majority of the said stock of said Southern Kansas Railway Company is owned by the Kansas City, Topeka & Western Railroad Company, which latter company is leased and and operated by said defendant company for its use and benefit, and that the balance of the stock of the said Southern Kansas Railway Company is owned by the defendant company; that both the defendant and the Southern Kansas companies use and occupy the same line of track from Kansas City, Mo., to Holliday, Kansas; that the same person is agent and ticket-seller for both companies at said station, Holliday; that the treasurer of said Southern Kansas Railway Company is also treasurer of the defendant company, and that the clerical work for said treasurer, pertaining to the Southern Kansas Company, is performed by the employés of the defendant company, and that the general officers and offices of both companies are both one and the same, you have a right to give such facts and circumstances due weight and consideration in arriving at your verdict."

"18. If you believe from the evidence that the defendant company was managing, and operating and controlling the Southern Kansas Railway Company on March 21, 1887, and that said defendant company caused the said Southern Kansas Railway Company's passenger train to stop at Holliday to receive passengers on said day to be carried for hire to Olathe, and that said defendant company then had a depot building and platform therewith connected at Holliday, aforesaid, for the purpose of receiving and discharging passengers to and from its own passenger trains and for the sale of tickets, and did then sell over said several railroads, then I charge you that it was the lawful duty of the defendant company to provide or furnish reasonably safe and convenient approaches to their several passenger coaches owned and managed, operated and controlled by said company, and it was the duty of said company to also use such approaches with care and due regard for the safety of passengers who were attempting to get upon such coaches by means of such approaches; and if, upon the said company failing to do so, an injury ensued to such passenger, then the said company will be held liable for injuries

resulting therefrom, provided such injured person was not guilty of any fault or want of ordinary care, or of any negligence contributing thereto.

"19. If the jury believe from the evidence that the deceased, on the 21st day of March, 1887, was a passenger on the defendant company's passenger train from Eudora to Holliday, and that on reaching Holliday the deceased immediately purchased a ticket from the defendant company's ticket agent at Holliday entitling the deceased to be carried as a passenger on the Southern Kansas Railway passenger train from Holliday to Olathe on said day, then managed, operated and controlled by said defendant company, and that said deceased on said day attempted to reach the Southern Kansas passenger train bound for Olathe, in the only way provided by the company to reach said train, which was then in waiting on a track at Holliday for passengers to Olathe, then I charge you that the deceased was a passenger at the time, and entitled to all the rights of such.

"20. I charge you that a person who has a railroad ticket and who is present to take the train at the ordinary or usual point of departure designated by the railroad company, is a passenger, though he has not entered the car of the particular train; and in the duties toward him, directly involving his safety, the company is bound to extraordinary diligence; and in these duties touching his convenience or accommodation, the company is bound to ordinary diligence, and this rule of extraordinary diligence applies to the receiving of passengers.

"21. When a carrier of passengers for hire by railway does not receive passengers into the car at the platform erected for that purpose, and either directs or impliedly invites passengers to enter the car at an out-of-the-way place, or at a place remote, some distance from such platform, it is the bounden duty of such company to use the utmost care in preventing injuries to passengers while so approaching to enter such car. And if you find in this case that the defendant company was negligent within the meaning of this instruction, and that the deceased was injured thereby, that the deceased did not contribute to such injury by his negligence, then the plaintiff is entitled to recover."

"23. When the arrangement of a passenger railroad station or depot, whether permanent or temporary, is such that a passenger has to cross a track before entering, then such passenger has a lawful right to assume that such track may

be crossed safely, and that the company will not expose him to unnecessary danger; and while the passenger himself must exercise reasonable care and prudence, his watchfulness may be naturally diminished by his reliance upon the discharge by the company of its duty to passengers to provide them with a safe passage to the train of cars."

The jury returned a verdict against the railroad company for $900, and also found, among others, the following special findings of fact:

"1. Was John M. Gibson, now deceased, carried by the defendant company on one of its passenger trains, as a passenger, from Eudora, Kansas, to Holliday, Kansas, on March 21, 1887?    A. Yes.

"2. Did the deceased, on reaching Holliday, purchase a ticket from the defendant's ticket agent at Holliday, entitling him to be carried on said day from Holliday to Olathe on a passenger train of the Southern Kansas Railway Company? A. Yes.

"3. Had the defendant company the control, direction and management of the Southern Kansas Railway and of the men then operating the engines and passenger trains of the Southern Kansas Company, and especially the engine and passenger train upon which the deceased then intended o take passage?    A. Yes."

"6. Was a majority of the stock of said Southern Kansas Railway Company then owned by the Kansas City, Topeka & Western Railroad Company?    A. Yes.

"7. Was the said Kansas City, Topeka & Western Railroad Company then leased and operated by the Atchison, Topeka & Santa Fé Railroad Company, for its use and benefit? A. Yes.

"8. Was the balance of the stock of the Southern Kansas Railway Company then owned by the Atchison, Topeka & Santa Fé Railroad Company?    A. Yes."

"26. Was it negligence on the part of the defendant company, when considered with all the other circumstances, in not bringing the said Southern Kansas train up to the platform so that passengers might get upon it at the time referred to? A. Yes.

"27. At the time the passengers, including the deceased, left the platform to cross the tracks to get upon said Southern Kansas train, did any person connected with either the de-

fendant company, or the Southern Kansas Railway Company, forbid or warn passengers not to cross the tracks? A. No."

"30. Did the deceased then leave the platform of the depot building and attempt to cross the track intervening the platform and the Southern Kansas passenger train referred to, for the purpose of getting upon said train to be carried from Holliday to Olathe as a passenger? A. Yes."

Judgment was entered upon the verdict of the jury. The *Railroad Company* excepted, and brings the case here.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error.

*A. Smith Devenney,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action brought by Joel Cochran, administrator of the estate of John M. Gibson, deceased, against the Atchison, Topeka & Santa Fé Railroad Company, to recover damages for the killing of Mr. Gibson, at Holliday, in this state. At the time of his death Mr. Gibson was a widower with two married daughters, and no other children. He was the owner of a farm in Douglas county, which was occupied by a tenant. One daughter resided at Eudora, and the other at Olathe. He sometimes made his home with one, and at other times with the other daughter. He was about sixty-five years of age. About eight o'clock A. M., on the 21st day of March, 1887, he left Eudora and took passage on a regular passenger train of the Atchison road for Holliday. The latter is a junction of the Atchison road and the Southern Kansas Railway, in Johnson county. Mr. Gibson left the train at Holliday, and at once purchased a ticket at the office there over the Southern Kansas Railway for Olathe. He was compelled to wait the coming of the Southern Kansas train from Kansas City, Mo., from about 9:30 A. M. until 11:30 A. M. The Southern Kansas train pulled into Holliday, on the second track, about 11:30 A. M., and at this time there were six or seven passengers for Olathe and the southwest waiting. When

the Southern Kansas came up, some of the passengers were on the south side of the platform, next to the first or main track; among them were Mr. Gibson, the deceased, Johnson and Owens. Just as the Southern Kansas train had come to a rest, one passenger crossed the first track, and the mail carrier crossed and got over, and he was followed by Mr. Gibson. As he got upon the track, a freight train of the Atchison road came in from the west, in front of the platform and on the main track; the engine struck Mr. Gibson, knocked him down, and dragged him some distance between the north rail and the platform. His head was badly cut, his leg was broken in two places, and he was greatly bruised about the body, internally and externally. His daughter, Mrs. Cochran, came to Holliday, took him to her house at Olathe, where he died, intestate, on the 30th day of March, 1887.

It is clearly apparent from the instructions of the court and the findings of the jury, that the recovery for the plaintiff below against the railroad company was upon the theory that Mr. Gibson, at the time of his injury, was entitled to the rights and privileges of a passenger of the Atchison company. This upon the claim that the Atchison company controlled, directed and managed the Southern Kansas Railway. The testimony in the record will not sustain a verdict upon this ground. The ticket which Gibson purchased at the station, read: "Southern Kansas Rly. Co. First-class ticket. Holliday to Olathe. (When stamped by agent at first-named station.) S. B. Hynes, G. P. A. (2882.) [Reverse side—stamped:] A. T. & S. F. R. R. Co., Holliday, Mar. 21st, 1887. Ex. I, A. P. R." At the station of Holliday, the second track south of the depot was used by the Southern Kansas Railway Company for its passenger trains, and the main track next to the depot, and south thereof, was used by the Atchison, Topeka & Santa Fé Railroad Company. The jury found that the majority of the stock of the Southern Kansas Railway Company was owned by the Kansas City, Topeka & Western Railroad Company; that the balance of the stock of the company was owned by the Atchison Company; and that the

Atchison Company leased and operated the Kansas City, Topeka & Western Railroad. The two companies, according to the testimony, are separate and independent corporations. The Atchison Company, by virtue of controlling the stock of the Southern Kansas Railway Company, was enabled to elect directors of that company. These directors elected several persons who were also officials of the Atchison Company.

In *Railroad Co. v. Davis*, 34 Kas. 209, 210, it is said:

"That corporation had the power to purchase and hold the stock and bonds of the Wichita & Western Railroad Company, or to guarantee the payment of the principal and interest of the bonds of that company, and thereby, as a stockholder or bondholder, or as a guarantor of the bonds, to aid that company to construct its road; but by so doing the Santa Fé Company did not make the Wichita & Western Company its servant or agent, and did not thereby make itself responsible for the negligence or other default of the Wichita & Western Company. (Laws of 1873, ch. 105; Const., art. 12, § 2; Comp. Laws of 1879, ch. 23, § 32.) . . . Where a parent company, operating a long line of road in the state, takes the necessary steps to construct an auxiliary railroad for the purpose of a local line, in the name of another company, and in strictly pursuing the provisions of the statute merely furnished aid as a stockholder or bondholder, or a guarantor of bonds, to the auxiliary company, and such auxiliary company constructs its road in its own name, it is not the servant or agent, in such construction, of the parent company; and the parent company is not, on account of being a stockholder or bondholder, or guarantor of bonds of the auxiliary company, responsible for the negligence or other default of the auxiliary company in constructing its road in its own name."

1. Railroad company— stockholder— liability.

In the case of *Pullman Car Co. v. Mo. Pac. Rly. Co.*, 115 U. S. 587, the former company claimed that the St. Louis, Iron Mountain & Southern Railway Company was controlled by the Missouri Pacific Company, and therefore that the Missouri Pacific Company was bound, under its contract, to haul the palace cars over it. In that case, as in this, it was shown that the Missouri Pacific Company owned stock in the rail-

way company, and in that way selected its directors.   The court, however, decided that this did not give it the control of the road.   Chief Justice Waite, in delivering the opinion of the court, said among other things that —

"The Missouri Pacific Company has bought the stock of the St. Louis, Iron Mountain & Southern Company, and has effected a satisfactory election of directors; but this is all.   It has all the advantages of a control of the road, but that is not in law the control itself.   Practically it may control the company, but the company alone controls its road.   In a sense, the stockholders of a corporation own its property, but they are not the managers of its business, or in the immediate control of its affairs.   Ordinarily they elect the governing body of the corporation, and that body controls its property.   Such is the case here.   The Missouri Pacific Company owns enough of the stock of the St. Louis, Iron Mountain & Southern to control the election of directors, and this it has done.   The directors now control the road through their own agents and executive officers, and these agents and officers are in no way under the direction of the Missouri Pacific Company.   If they or the directors act contrary to the wishes of the Missouri Pacific Company, that company has no power to prevent it, except by the election, at the proper time and in the proper way, of other directors, or by some judicial proceeding for the protection of its interest as a stockholder.   Its rights and its powers are those of the stockholder only.   It is not the corporation, in the sense of that term as applied to the management of the corporate business or the control of the corporate property."

There is no testimony in the record tending to show that the Atchison road leased the Southern Kansas road, or that it was the owner of the road.   The rights and powers of the Atchison road were those of a stockholder only; therefore the Atchison road was not the Southern Kansas corporation in the sense of that term as applied to the management of the corporate business, or the control of the corporate property of the Southern Kansas.

Under the laws of this state a railroad company has a lawful right to purchase and hold stock of any other railroad

2. Company may purchase stock in another company. company, the line of whose railroad, constructed or being constructed, connects with its own. (*Atchison Rld. Co. v. Fletcher*, 35 Kas. 236.) The stockholders of a railroad company may be said in a certain sense to control, direct and manage the road, but an action for the negligence of the officers, agents, or employés of the railroad company must be brought against the company, not against the stockholders; therefore, as the rights and powers of the Atchison road in the Southern Kansas Railway Company were those of a stockholder only, the Atchison company is not responsible for the wrongful acts of omission or commission of the Southern Kansas road. As the rights and powers of the Atchison road in the Southern Kansas were those of a stockholder only, the instructions of the

3. Negligence of connecting company. court that the jury might find from the testimony that the Southern Kansas Railway Company, for all practical purposes, was managed, controlled and operated by the Atchison company, was misleading. The finding of a verdict upon this and similar instructions cannot be sustained.

The fact that Mr. Gibson purchased a ticket to ride over the Southern Kansas road at the station of the Atchison road at Holliday did not make him a passenger of the Atchison road, or make the Atchison road responsible for the negligence of the Southern Kansas road. The jury found that the person in charge of the ticket office at the station of Holliday was agent both for the Atchison Company and the Southern

4. Ticket agent for two connecting companies— liability. Kansas Company; but even if the ticket agent at Holliday acted for the Atchison road, and the Atchison road sold the ticket for the Southern Kansas road, this would not make the Atchison road liable for the negligence of the Southern Kansas. The ticket purchased by Mr. Gibson shows that the contract of carriage was made on behalf of the Southern Kansas Railway Company.

Upon a retrial, unless different testimony is presented, the case should not go to the jury upon the theory that the Atchison Company controlled, directed and managed the Southern

Kansas Railway. If the Southern Kansas road was guilty of negligence in not running its passenger trains close or near to the station, that company is responsible, not the Atchison. If the Atchison road operated its freight train negligently, and without any contributory negligence on his part Mr. Gibson was killed thereby, then the Atchison Company is liable, not the Southern Kansas. They were two separate corporations, and the one is not responsible for the negligence of the other.

The judgment of the district court will be reversed, and the cause remanded.

All the Justices concurring.