KIMBALL *et al. v.* ATCHISON, T. & S. F. R. Co. *et al.*

*(Circuit Court, E. D. Missouri, E. D.* June 6, 1891.)

1. RAILROAD COMPANIES—ACQUISITION OF COMPETING ROAD.

Rev. St. Mo. § 2569, which prohibits any railroad company within the state from owning, operating, or managing any other parallel or *competing railroad within the state,* applies only where both the roads are situated within the state, and the competition between the two must be of some practical importance, such as is liable to have an appreciable effect on rates.

2. SAME.

Two railroads which do not touch at any two common points, and between which for a distance of 40 miles another railroad is interposed, and whose traffic, except an unimportant amount, would in no event pass over the other, are not competing lines, within the meaning of the statute.

3. SAME.

Section 2569, Rev. St. Mo., was intended to give full effect to section 7, art. 12, Const. Mo., and inasmuch as it did not satisfactorily appear that the legislature had either misconstrued or failed to give full effect to the constitution, *held,* that the court would not grant a preliminary injunction based on a construction of the constitution different from that adopted by the legislature of the state.

In Equity. On motion for preliminary injunction.

Rev. St. Mo. § 2569, provides as follows:

"It shall be unlawful for any railroad company, corporation, or individual owning, operating, or managing any railroad in the state of Missouri, to enter into any contract, combination, or association, or by any manner of means whatever consolidate the stock, property, or franchises of such company, corporation, or individual, or to lease or purchase the works or franchises of, or in any way whatever to any degree exercise control over, any railroad company, corporation, or individual owning or having under his or their control or management a parallel or competing line in this state; but each and every such railroad, whether owned, operated, or managed by a company, corporation, or individual, shall be run, operated, and managed separately by its own officers or agents, and be dependent for its support on its own earnings from its local and through business, in connection with other roads, and the facilities and accommodations it shall afford the public for travel and transportation under fair and open competition." Laws 1887, p. 102.

Const. Mo. art. 12, § 17, provides:

"No railroad or other corporation, or the lessees, purchasers, or managers of any railroad corporation, shall consolidate the stock, property, or franchises of such corporation with, or lease or purchase the works or franchises of, or in any way control, any railroad corporation owning or having under its control a parallel or competing line; nor shall any officer of such railroad corporation act as an officer of any other railroad corporation owning or having the

control of a parallel or competing line. The question whether railroads are parallel or competing lines shall, when demanded, be decided by a jury, as in other civil issues."

*Henry Hitchcock,* for complainants.

*George R. Peck,* for Atchison, T. & S. F. R. Co.

*E. D. Kenna,* for St. Louis & S. F. Ry. Co.

THAYER, J., (*orally.*) The matter that has been under consideration for some days past in this case, is an application for an injunction *pendente lite* to restrain the Atchison, Topeka & Santa Fe Railroad Company, hereafter called the "Atchison Company," from voting certain shares of stock which it has acquired in the St. Louis & San Francisco Railway Company, hereafter called the "Frisco Company." The case in all of its aspects has been very thoroughly argued, and the discussion has embraced some questions, particularly the question as to the meaning of the word "control," as used in the constitution and statutes of this state, which the court deems it unnecessary to decide.

I shall content myself with a brief statement of the conclusions which I have formed on some of the more vital questions involved, and, for want of time, shall be compelled to do so mainly without amplification or argument. The complainants, who are stockholders of the Frisco Company, base their right to relief on the ground that it was unlawful for the Atchison Company to acquire stock in the Frisco Company, or, at least, to acquire a majority of its stock. If this contention fails, complainants, as a matter of course, are without right to relief, and all other subsidiary and collateral questions become immaterial.

1. I entertain no doubt of the fact that the Atchison Company had, under its charter and the laws of the state of Kansas, as construed by its highest court, (*Railroad Co.* v. *Fletcher*, 35 Kan. 236, 10 Pac. Rep. 596; *Same* v. *Cochran*, 43 Kan. 225, 23 Pac. Rep. 151; *Venner* v. *Railroad Co.*, 28 Fed. Rep. 581,) the requisite power and authority to make a valid purchase of Frisco stock, either much or little, unless such purchase was prohibited by the laws of the state of Missouri, under which the Frisco Company was incorporated; and it goes without saying that the Atchison Company could not make a valid purchase of the stock of a Missouri corporation in contravention of the laws of the state of Missouri. The question whether the purchase of the stock was *ultra vires* when tested by the laws of Kansas, where the Atchison Company was incorporated, is therefore eliminated from the controversy, and the transaction will be considered in the light of the constitution and laws of the state of Missouri.

2. The view that the court entertains of section 17, art. 12, of the constitution of Missouri, and of section 2569 of the Revised Statutes of the state, which, as it is claimed, rendered the purchase of stock in the Frisco Company unlawful, may be substantially stated as follows: The prohibition contained in the statute (section 2569) is clearly aimed at railroad companies "owning, operating, or managing a railroad in the state of Missouri." If a railroad company owns, operates, or manages a rail-

road in this state, it is prohibited, among other things, from leasing, purchasing, or exercising any control over any other railroad in the state that is substantially parallel to, or a competitor of, the road so owned, operated, or managed. This is, in substance, the extent of the statutory inhibition. Now, while conceding, for the purposes of the present decision, that the Atchison Company at the time of its purchase managed and operated two railroads in this state, namely, one from Kansas City northeastwardly through the state to Chicago, and one from St. Louis to Union, in Franklin county, Mo., a distance of about 60 miles, yet the court concludes that neither of these roads was, in the statutory sense, parallel to, or a competitor of, the Frisco. It appears to the court obvious that the road from Kansas City to Chicago cannot, in any just sense, be said to be a competing line; and in explanation of my ruling that the St. Louis, Kansas City & Colorado Railroad, extending from St. Louis to Union, hereafter called the Colorado Company, was not in the statutory sense a competitor of the Frisco, I will say, that when the statute speaks of competing roads it evidently means roads that are substantial competitors for business; it refers to competition of some practical importance, such as is liable to have an appreciable effect on rates, and in that sense the road to Union was not, in my judgment, a competing line.

The evidence before me discloses the fact that the Atchison Company had abandoned its purpose of constructing the Colorado road beyond Union before it purchased or determined to purchase the Frisco stock. It shows that the Colorado road and the Frisco do not touch any two common points; that between the two roads, for more than 40 miles, the Missouri Pacific Railroad is interposed; that the Colorado road is in reality a suburban road; and that not more than 1 per cent. of its traffic, which is, in the aggregate, infinitesimal, when compared with the traffic over the Frisco, would, in any event, pass over the Frisco. All of these considerations lead me to the conclusion that the Colorado road was not a competing line, within the meaning of the statute, and that the Atchison Company was not disqualified from purchasing the Frisco stock, even though it be conceded that it operated and managed the Colorado road at the time of the purchase.

3. The next question that I have considered, and with a due appreciation of its importance, is whether the constitutional inhibition contained in section 17, art. 12, is any more comprehensive than the statutory prohibition last considered. According to the view that the court takes of the case it cannot, or at least it ought not, to grant an injunction, unless it clearly appears that the general assembly has failed to give full effect to the constitutional prohibition, nor unless it appears that the purchase of the Frisco stock is in violation of the constitution, though not in violation of the statute. It is sufficient to say on this point that the court is not prepared to hold that the general assembly has either misconstrued section 17, art. 12, of the constitution, or that it intentionally failed to give it full effect when it enacted section 2569 of the Revised Statutes. On the contrary, I have no doubt that the

legislature intended to make the statute as broad as the constitution, and good reasons, no doubt, exist for holding that it accomplished its purpose. It is certainly a reasonable view, and one justified by the language employed, that the constitutional inhibition, like the statutory, was aimed at railroad corporations which might at any time own, operate, manage, or secure the right to run trains over roads located in this state, and that the purpose was to prevent such a corporation from purchasing, leasing, or controlling another road of the state, that was parallel to, or that competed with, the road so owned, operated, or managed. Such an inhibition would certainly preserve the independence of, and secure competition between, rival lines of railroad crossing the state in all directions, and connecting important commercial centers within the state; and it may fairly be urged that this was the purpose had in view by those who framed the present constitution. On the other hand, it may well be doubted whether the constitutional prohibition in question was intended to have the effect of preventing a great railroad system like the Atchison, occupying, as it does, an extensive area of country to the westward of this state, from obtaining access to the city of St. Louis by the purchase of, or by consolidation with, one of the four or five trunk lines crossing the state from east to west, merely because the road so purchased touches some points in Kansas which the Atchison system also reaches. The preservation of reasonable rates was the great object in view, and, as the proof in this case abundantly shows, the acquisition by the Atchison Company of the Frisco stock has had no effect upon rates between points in this state and those points in Kansas which are reached by the Frisco; and it must be apparent to any one familiar with the railroad situation in this state and Kansas that it cannot have any tendency in the future to increase such rates. In what I have thus said on the point now under consideration I would not be understood as deciding definitely that the prohibitions contained in the constitution and in the statute are in all respects identical. It is unnecessary to decide that question at this stage of the case. I do mean to say, however, that complainants have not succeeded in showing to my satisfaction, that section 17, art. 12, is any more comprehensive than the statute, (section 2569,) or that the legislature has misconceived or misconstrued the constitution.

From the views which I have thus outlined, it follows that I must decline to grant an injunction, because the purchase of the Frisco stock was not, in my judgment, in contravention of the statute, and because it is by no means certain that such purchase was prohibited by the constitution. In a case of this character it can hardly be expected that the court will allow an injunction, thereby jeopardizing great interests, upon a construction of the constitution that is certainly doubtful, and that is at the same time contrary to the construction that has been adopted, and, as it would seem, deliberately, by the general assembly of this state.

The motion for an injunction is accordingly overruled.