# CASES ARGUED AND DECIDED

IN THE

# SUPREME COURT OF GEORGIA

AT THE

# MARCH TERM, 1895.

## THE EXCHANGE BANK OF MACON v. THE MACON CONSTRUCTION COMPANY et al.

1. The fact that one corporation owns the entire capital stock of another, does not vest in the former the legal title to the property of the latter, nor render the two corporations identical. On the contrary, they are separate and distinct legal entities.
2. Accordingly, though one who lends money to a corporation which owns all of the capital stock of a railroad company, may, under some circumstances, subject to the payment of the loan the property of the railroad company as equitable assets of the borrower, the lender in such case cannot, in preference to the lien of a valid mortgage executed by the railroad company to secure an issue of bonds, even in equity, have his claim paid out of money realized by a receiver from the sale of the property of that company.
3. Nor, under the facts recited, can the lender, as a party to an equitable proceeding, be allowed, by virtue of his rights as an alleged creditor of the railroad company, under a decree disposing of the assets of the latter alone, payment of the loan out of earnings of the railroad company which came into the hands of the receiver while it was being operated by him; and this is so, although the receiver may have previously used portions of such earnings in paying interest to the bondholders secured by the mortgage, and in making betterments and improvements upon the railroad property which largely increased the value of the bondholders' security.

October 5, 1895. Argued at the last term.

Exceptions to master's report. Before Judge Smith. Bibb superior court. November term, 1893.

*Bacon & Miller*, for plaintiff in error.

*Hoke Smith, Dessau & Hodges, C. L. Bartlett, Gustin, Guerry & Hall, Anderson & Anderson, Hardeman, Davis & Turner, Hill, Harris & Birch, John L. Hardeman* and *Steed & Wimberly*, contra.

LUMPKIN, Justice.

The affairs of three corporations, viz: the Exchange Bank of Macon, the Macon Construction Company, and the Georgia Southern & Florida Railroad Company, are involved in this case. For convenience, and for the sake of brevity, they will be respectively designated "the Bank," "the Construction Company," and "the Railroad Company."

The railroad of the company last named was built by the Construction Company under a contract between the two companies, by the terms of which all the stock of the Railroad Company became and was the property of the Construction Company; and it appears that after its completion, the railroad was operated exclusively by the Construction Company, but the organization of the Railroad Company was kept complete and intact. Before the indebtedness of the Construction Company to the Bank, which will presently be mentioned, had been incurred, the Railroad Company, in its corporate name and capacity, had issued and negotiated a large number of bonds and secured the same by a deed of trust conveying all of its property; and the present controversy is between the trustee of the holders of these bonds and the Bank. The nature and extent of this controversy, so far as material to this discussion, will appear from the following statement:

The Bank, at different times, loaned to the Construction Company, and upon its credit, large sums of money, portions of which were to be used, and were in fact used, in paying the employees operating the railroad their wages, and in paying off an indebtedness incurred by the Construction Company in purchasing equipments for the railroad.

There were no direct dealings between the Bank and the Railroad Company, and no contractual relations whatever existed between these two corporations.

The Construction Company gave its promissory notes to the Bank for the sums borrowed as above stated; and, as to some or all of the indebtedness thus created, agreed to deposit in the bank, to be applied in its reimbursement, the daily earnings of the railroad. A portion of the Construction Company's indebtedness to the Bank was also secured by the deposit of collaterals, upon which a considerable sum was realized and credited upon that indebtedness.

In view of the principles by which, in our judgment, this case is controlled, it is not now important to determine definitely whether the agreement of the Construction Company to deposit for the security of the Bank the earnings of the railroad related to the whole or only to a part of the indebtedness of the former to the latter; nor whether all of these earnings were to be applied to the satisfaction of the notes of the Construction Company, or only such portions of the earnings as could be used for this purpose after excepting so much of the same as were necessarily withdrawn in order to keep the railroad in operation; nor whether or not the Bank, with the means for so doing in its hands, neglected to make the proper application of the same and thus obtain full payment from the Construction Company. Whatever the truth as to these several matters may be, the fact remained that the Construction Company was still very largely indebted to the Bank for money borrowed and used as above stated, when, upon the petition of McTighe & Co., all the property of both the Construction Company and the Railroad Company was placed in the hands of a receiver, thus making a case which resulted in prolonged and complicated litigation. The Bank filed in this case two separate interventions, in which it set forth its claims in substance as hereinbefore recited, showing the balances due

to it and seeking, among other things, to have the same paid as debts of the Railroad Company out of the proceeds of the sale of its property by the receiver, or from its earnings while he was operating it under the orders of the court,— the Bank contending that, under the facts as stated, it was really a creditor of the Railroad Company, and as such entitled to priority of payment as against the claims of its bondholders. The trustee of the bondholders, who was also a party to the case, on the other hand, contended that the Bank was in no sense a creditor of the Railroad Company, but of the Construction Company alone; that the Bank, therefore, had no lien, either legal or equitable, upon the property of the Railroad Company, or its proceeds, or upon the earnings of that company; and that consequently, in administering its assets, the Bank could have no priority, or rights of any kind, as against the bondholders.

These interventions were referred to a special master, who reported against the intervener, and it filed various exceptions to his report. By agreement the two interventions were consolidated and tried together by the judge without a jury, and by consent this branch of the main case made by the petition of McTighe & Co., was treated as a separate and distinct case between the Bank and the trustee of the bondholders. The judge held that the master had committed no error, overruled the Bank's exceptions, and, so far as it was concerned, made the report of the master the judgment of the court; to all of which the bank excepted.

The main contention upon which the Bank rested was, that it was a creditor of the Railroad Company. Upon the assumption that it was, it set forth various grounds for its further contention that it was entitled to be treated as a preferred creditor of that company, having a lien superior to that of its bondholders. If the Bank had succeeded in establishing its first proposition, an inquiry into these grounds and their merits, with a view to testing the correct-

ness of the second contention, would be necessary. As it did not, in our opinion, establish the first proposition, an investigation into what would have been the rights of the Bank had it been a creditor of the Railroad Company, holding against it the claims it has against the Construction Company, is not essential.

It must be borne in mind that the assets with which the court was dealing were those of the Railroad Company as such. While they may, in a sense, have belonged to the Construction Company, because it was the sole owner of the stock of the Railroad Company, the right of the Construction Company to assert its ownership, or to actually have the beneficial use and enjoyment of these assets, was beyond all doubt or question postponed to the lien of the bondholders. This, as we understand the matter, was a conceded point, the contest being between the Bank, insisting that it was a creditor of the Railroad Company and claiming as such, on the one hand, and the bondholders, admitted to be creditors of that company, on the other.

Had these parties been contesting as creditors of the Construction Company over a distribution of its assets, the questions to be disposed of would have been altogether different. As it is, the controversy must be determined with reference to the true relations existing between each of the respective claimants and the Railroad Company; and this being so, the Bank's claim must stand or fall upon the proper decision of the question as to whether or not it can rightly be regarded as a creditor of that company. That it can not be, and consequently has no lien either upon the proceeds of the sale of the railroad property or the income derived from its operation by the receiver, will, we think, be made apparent by the following brief discussion of the points announced in the head-notes.

1. Every corporation is a person—artificial it is true, but nevertheless a distinct legal entity. Neither a portion nor all of the natural persons who compose a corporation, or

who own its stock and control its affairs, are the corporation itself; and when a single individual composes a corporation, he is not himself the corporation. In such case, the man is one person created by the Almighty, and the corporation is another person created by the law. It makes no difference in principle whether the sole owner of the stock of a corporation is a man or another corporation. The corporation owning such stock is as distinct from the corporation whose stock is so owned as the man is from the corporation of which he is the sole member. That a business corporation is a separate legal entity, and as such owns the property belonging to it, is recognized by Mr. Justice Nelson in the case of Van Allen v. Assessors, 70 U. S. 584, as "familar law," and in this connection he cites Queen v. Arnoud, 9 A. & E. (new series) 806, and quotes from Lord Denman as follows: "It appears to me that the British corporation is, as such, the sole owner of the ship. The individual members of the corporation are no doubt interested in one sense in the property of the corporation, as they may derive individual benefits from its increase, or loss from its decrease; but in no legal sense are the individual members the owners." In Button v. Hoffman, 61 Wis. 20, s. c. 50 Am. Rep. 131, Orton, J., says: "From the very nature of a private business corporation, or indeed of any corporation, the stockholders are not the private and joint owners of its property. The corporation is the real though artificial person substituted for the natural persons who procured its creation and have pecuniary interests in it, in which all its property is vested, and by which it is controlled, managed and disposed of. It must purchase, hold, grant, sell and convey the corporate property, and do business, sue and be sued, plead and be impleaded, for corporate purposes, by its corporate name. The corporation must do its business in a certain way, and by its regularly appointed officers and agents, whose acts are those of the corporation only as they are

within the powers and purposes of the corporation. In an ordinary copartnership the members of it act as natural persons and as agents for each other, and with unlimited liability. But not so with a corporation; its members, as natural persons, are merged in the corporate identity." And see the numerous authorities cited by this learned jurist in support of the above. Two other cases strongly in point are, Pullman's Palace Car Co. *v.* Mo. Pac. Railway Co. *et al.*, 115 U. S. 587, and A., T. & S. F. Railroad Co. *v.* Cochran, admr., 43 Kan. 225.

We conclude what we have to say on this branch of the case by making the following pertinent extracts from that most excellent work, Cook on Stock and Stockholders and Corporation Law:

"A corporation is an entity and existence separate from its officers and stockholders. And the inclination of some writers to assimilate a corporation as nearly as possible to a partnership and to apply to the former the rules applicable to the latter, leads only to confusion and is contrary to the law."

"The difference between a corporation and a partnership, and the advantages of a corporation over a partnership as a means of doing business, are very marked and should not be limited by construction."

"A corporation is an entity, an existence, irrespective of the persons who own all its stock. The fact that one person owns all the stock does not make him and the corporation one and the same person. Although one railroad corporation owns all the stock of another railroad corporation, yet the separate existence of the two corporations continues and they are not thereby merged." See volume 1, §6, and authorities cited in notes.

2. The Construction Company and the Railroad Company being, therefore, distinct corporations, and the Bank being a creditor of the former only and not of the latter, it is clear that the Bank has no legal lien upon the property of

the Railroad Company. Has it, then, an equitable lien upon such property? It claims that it has, and contends, among other things, that as to the money it furnished and which was used in paying the employees of the Railroad Company, it became subrogated to their rights and equities, and thus acquired a lien upon the property of the Railroad Company superior to that of the bondholders, and that it also has a like superior lien as to the money it furnished and which was expended in purchasing equipments for the railroad.

This is not an exhaustive statement of the contentions of the Bank, nor of the reasons urged to sustain the same, but will suffice to show, in a general way, the nature of the grounds upon which it rested its claim of priority over the bondholders. Its able and learned counsel submitted many strong arguments, and cited numerous authorities in support of their contentions, including those the nature of which we have stated and others which we have not deemed it necessary to set forth. We feel convinced that the moral equities of their client, the Bank, stand upon a very high footing, but are constrained to deal with the case from a legal standpoint. Thus regarding the matter, we are of the opinion that these arguments and authorities are not applicable to the case in hand, and for this reason, as already indicated, we do not undertake to state or follow them out in detail. It must not be overlooked that the Bank dealt with and extended credit to the Construction Company. It had no direct dealings at all with the Railroad Company, and never became its creditor. If it had furnished money to that company, then, in a contest over the distribution of its assets between the Bank and the bondholders, all the positions now taken in support of the Bank's alleged superior equities, and the arguments presented to show the correctness of those positions, would be pertinent and appropriate, and, we are frank to say, would be of great weight and entitled to the most serious consideration. If,

however, we have shown that the Bank, in the present controversy, does not occupy the position of a creditor of the Railroad Company, the case is altogether a different one from that just supposed.

Again, if the Bank, as a creditor of the Construction Company, was seeking to subject to the payment of its claims the property of the Railroad Company as equitable assets of the Construction Company, there might undoubtedly be circumstances under which this could be done. A case affording an illustration of this kind is that of Day *v.* Postal Tel. Co. (Md.), 7 Atl. 608. As will have been seen from what has been said above, that case and others of like character are entirely different from the case at bar; for, we repeat once more, it must not be overlooked that the Bank is here claiming to be a creditor of the Railroad Company and insisting upon the enforcement of its alleged rights in that capacity, and in no other.

3. If our views of this case as above expressed are sound, it follows as a necessary conclusion that under a decree disposing of the assets of the Railroad Company alone, the Bank cannot claim repayment of its loans to the Construction Company out of the earnings of the Railroad Company which came into the hands of the receiver while it was being operated by him. It makes no difference what disposition the receiver may have previously made of portions of such earnings. Whether, with the same, he paid interest on the company's bonds, or used the same in making betterments and improvements upon the railroad property, is a matter of no concern to the Bank, for the reason that it is not a creditor of the Railroad Company, and therefore, is not affected in any manner by the receiver's conduct in dealing with its assets. It must be remembered that in the case now under consideration the court was not undertaking to dispose of any assets directly belonging to the Construction Company as such. The court had in its hands for distribution no property to which the Construction Company had

a legal title, nor any fund arising in any manner from such property. Although, in a sense and for certain purposes, the *corpus* and the income of the property belonging legally to the Railroad Company might be regarded as equitable assets of the Construction Company, the Bank, as an alleged creditor of the Railroad Company has to stand upon whatever may be its rights in that capacity, and can take nothing in this litigation as a creditor of the Construction Company.

Our conclusion, therefore, upon the whole is, that no error was committed by the trial court.

*Judgment affirmed.*