## Ayer & Lord Tie Company, et al. v. Commonwealth, on Relation, et al.

(Decided April 28, 1925.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Taxation—Property to be Exempt Must be in Course of Manufacture and Must be Product of One "Actually" Engaged in Manufacturing.—Under Ky. Stats., section 4019a-10, subdivision 2, and section 4020, property to be exempt from other than state taxation must be in course of manufacture, and must be products of persons, firms, or corporations actually engaged in manufacturing; "actually" meaning "really;" "in fact;" "in truth."

2. Corporations—Equity in Some Instances will Treat Corporation and Owners of all Stock as Identical.—Equity in some instances will treat corporation and owners of all of its stock as identical.
3. Corporations—Acts of Officers and Agents Within Scope of their Authority are Acts of Corporation Itself.—Acts of officers and agents within scope of their authority are acts of corporation itself.
4. Corporations—Corporations Not Merged nor Made Agents for Each Other by Control of One Over the Other.—That one corporation controls another through stock ownership or identity of stockholders does not make either agent of other or merge them.
5. Taxation—Ties Held for Creosoting by Corporation Controlled by Corporations Owning them Held Not Exempt from Other than State Taxes.—Where two incorporated tie companies jointly built a creosoting and preserving plant which was operated by a third corporation, stock of which they owned, corporate entities were not identical, and the companies were not actually engaged in manufacturing ties in hands of the third corporation, so as to be entitled, under Ky. Stats., section 4019a-10, subdivision 2, to exemption from other than state taxes thereon.

WM. F. CLARKE, JR., and J. MATT CHILTON for appellants.

WOODWARD, WARFIELD & HOBSON and C. C. GRASSHAM for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

This appeal challenges the correctness of a judgment of the Jefferson circuit court declaring that certain crossties belonging to appellants and on hand at the plant of the Producers' Wood Preserving Company in Jefferson county on June 30, 1922, are taxable at the regular rate of $1.30 on each $100.00, and not at the rate of 40 cents on each $100.00, the rate then in force for products in course of manufacture.

The agreed statement of facts is as follows:

"(1) Ayer & Lord Tie Company is a corporation, Bond Brothers is a corporation, and both corporations were and are producers, preservers and dealers in railroad crossties throughout the south and other parts of the United States of America.

"(2) For their convenience and for the purposes of manufacturing, finishing and better preparing their railroad crossties, the two corporations, by mutual agree-- ment, jointly built the plant in Jefferson county, Kentucky, for creosoting and preserving wood materials and especially railroad crossties (which is conceded to be manufacturing within the meaning of subsection 2, sec-

tion 4019a-10, Carroll's Kentucky Statutes, 1922), and incorporated it separate and apart from the two corporations in the name of Producers' Wood Preserving Company, to which they each contributed and in which they each owned an undivided one-half thereof and they only and solely subscribed for and now own and have ever owned the corporate stock of said company, it being created into a corporation for convenient purposes of contracting and accounting in their joint behalf.

"(3) No service is rendered by Producers' Wood Preserving Company to anyone except by the joint agreement of itself, Ayer & Lord Tie Company and Bond Brothers, they being the owners and controllers thereof. Producers' Wood Preserving Company is owned share and share alike in equal amounts by Ayer & Lord Tie Company and Bond Brothers, and the three corporations working together and by common consent treat all material that Ayer & Lord Company and Bond Brothers deliver to the plant of Producers Wood Preserving Company for treatment, and no other, the Producers' Wood Preserving Company doing the actual treating and receives payment therefor from said two companies. Producers' Wood Preserving Company does not own, produce or deal in any railroad crossties or any material of any kind for treatment, use or sale to anyone.

"(4) Since Ayer & Lord Tie Company and Bond Brothers own exclusively all the corporate stock and furnished all moneys for acquiring said building and operating the plant of the Producers' Wood Preserving Company, the official board or directorate was chosen from Ayer & Lord Tie Company and Bond Brothers, and Russell Lord, president of the Ayer & Lord Tie Company, was in the beginning made, and is now, the president of the Producers' Wood Preserving Company, and Oscar Bond was in the beginning made, and is now, vice president of Producers' Wood Preserving Company, he being also president of Bond Brothers, and Arthur W. Armstrong, secretary and cashier of Ayer & Lord Tie Company, was in the beginning made, and is now, secretary and treasurer of the Producers' Wood Preserving Company, and L. L. Brooks, secretary and treasurer of Bond Brothers, was in the beginning made, and is now, assistant secretary and treasurer of the Producers' Wood preserving Company.

"(5) All accounts and transactions of the Producers' Wood Preserving Company have been continuously

from the beginning and are still reported to, entered upon the books of, kept, carried for and accounted to the Ayer & Lord Tie Company, and any and all railroad crossties treated by Ayer & Lord Tie Company or Bond Brothers at the Producers' Wood Preserving Company plant, whether on specific order for self, or for railroads to which either of said corporations has made sale of railroad crossties, are charged to Ayer & Lord Tie Company and Bond Brothers in such way and manner that the profit of such treatment shall be for their joint use and benefit as joint operators of said plant with the Producers' Wood Preserving Company, such profits having been received through the medium of the agency of said corporation and are distributed equally upon their like ownership of stock.

"(6) The only use and purpose of creating the Producers' Wood Preserving Company by Ayer & Lord Tie Company and Bond Brothers was to enable it to function more simply for and in their behalf in the treatment of materials and for the treatment of greater quantity with ease and facility and for economy in treatment of same and in a less complicated way of accounting therefor.

It will be observed that the exact question for decision is as to whether Producers' Wood Preserving Company is to be treated for the purposes of taxation in question merely as an aid or auxiliary to Ayer & Lord Tie Company and Bond Brothers, as they contend it should be done, or is to be treated as a separate and distinct manufacturing plant whose relation to Ayer & Lord Tie Company and Bond Brothers is the same as is the ordinary relation of a manufacturing company to its patrons who have no financial interest in the manufacturing establishment in question and who deal with it merely as outside customers.

Section 4020, Kentucky Statutes, provides that all real and personal estate within this state, unless exempted from taxation by the Constitution, shall be assessed at its fair cash value, estimated at the price it would bring at a fair voluntary sale.

Omitting certain provisions not material, section 4019a-10 is as follows:

"All property subject to taxation for state purposes as provided in section 4020, Kentucky Statutes, shall be subject also to taxation in the county, city,

school or other taxing district in which the same has a taxable situs except the following classes of property which shall be subject to taxation for state purposes only:

"2. Machinery and products in course of manufacture of persons, firms, or corporations actually engaged in manufacturing, and their raw material actually on hand at their plants for the purpose of manufacture."

To bring the crossties within the provisions of subsection 2, two things are necessary: (1) They must be products in course of manufacture; (2) they must be products of persons, firms or corporations *actually engaged* in manufacturing. Full effect must be given to the word "actually." It means "really," "in fact," "in truth," and the question is, do appellants meet the requirements of the statute? It is admitted that the creosoting is not done by appellants at their plants, but is done at the plant of the Producers' Wood Preserving Company. It is argued that appellants were actually engaged in manufacturing because the work was done by a corporation which they own and which was organized for that purpose and no other.

There are instances where a court of equity will treat a corporation and the individual or individuals owning all its stock and assets as identical. Thus corporate existence as an entity distinct from its members may be ignored in order to circumvent the fraudulent purpose of the shareholders in its organization. Franklin Mining Co. v. O'Brien, 22 Col. 129, 43 Pac. 1016, 55 A. S. R. 118. Also, where the corporation is proceeding in equity to assert rights of an equitable nature, or on equitable principles, a court of equity will not forget that the stockholders are the real and substantial beneficiaries of a recovery, and if the stockholders have no standing in equity, and are not equitably entitled to the remedy sought to be enforced by the corporation in their behalf, the corporation will not be permitted to recover. Home Fire Insurance Co. v. Barber, 67 Neb. 644, 93 N. W. 1024, 108 A. S. R. 716, 60 L. R. A. 927. Doubtless there are other instances where a court of equity will look behind the corporation to the stockholders, but the general rule is that a corporation is for most purposes an entity distinct from its individual members and stockholders. The acts of its officers and agents within the scope of their authority are the acts of the corporation itself, and in

this respect it differs from an ordinary co-partnership, the members of which act as natural persons and as agents for each other. Button v. Hoffman, 61 Wis. 20, 20 N. W. 667, 50 Am. Rep. 131; Exchange Bank of Macon v. Macon Construction Co., 97 Ga. 1, 25 S. E. 326, 33 L. R. A. 800. As said by Judge Lumpkin in the case last cited, "Neither a portion nor all of the natural persons who compose a corporation, or who own its stock and control its affairs, are the corporation itself; and when a single individual composes a corporation, he is not himself the corporation. In such case the man is one person, created by the Almighty, and the corporation is another person, created by the law. It makes no difference in principle whether the sole owner of the stock of a corporation is a man or another corporation. The corporation owning such stock is as distinct from the corporation whose stock is so owned as the man is from a corporation of which he is the sole member." To the same effect is Louisville Banking Co. v. Eisenman, 94 Ky. 83, 21 S. W. 531, 1049, 42 A. S. R. 335, 19 L. R. A. 684. Not only so, but the fact that one corporation exercises a controlling influence over another through the ownership of its stock, or through the identity of stockholders, does not operate to make either the agent of the other, or to merge the two corporations into one. Richmond, &c., Construction Co. v. Richmond, &c., R. Co., 68 Fed. 105, 31 U. S. App. 704, 15 C. C. A. 289, 34 L. R. A. 625. In view of these principles it is difficult to perceive upon what theory it can be said that appellants are actually engaged in manufacturing when in truth and in fact the entire work of creosoting the ties is done by a separate and distinct corporation, although it was organized for their convenience and its entire capital stock is owned by them. To so hold we would have to adopt the rule that any number of persons interested in selling a manufactured product might organize a corporation to do the manufacturing and that each of the shareholders of the manufacturing corporation would thereby become a manufacturer himself. This it seems to us would violate both the letter and spirit of the statute. It follows that the Jefferson circuit court did not err in reaching the same conclusion.

Judgment affirmed.

Whole court sitting.