# Todd County et al. v. Bond Bros.

June 8, 1945.

George S. Weathers and N. E. Frey for appellants.

Woodward, Dawson, Hobson & Fulton and Trimble & Trimble, for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

Appellants, defendants below, bring this appeal from a judgment of the Todd Circuit Court granting the prayer of plaintiff's petition under the provisions of the Declaratory Judgment Act. Civil Code of Practice, sec. 639a—1 et seq.

The plaintiff below filed its petition wherein it stated that on or about July 1, 1943, it duly executed, swore to, and thereupon filed with the Tax Commissioner of Todd County its return of property for taxes as of July 1, 1943, in which return the plaintiff duly listed certain personal property belonging to the plaintiff of the fair market value of $60,000, consisting of certain raw materials to be manufactured into railroad ties, and certain railroad ties which were in the process of being manufactured, but which had not been completely manufactured, and at the same time, further declared that such property was subject only to state taxation and not to taxation by the defendant, Todd County, or by the defendant, Board of Education. In its petition it stated that the above-mentioned property is subject only to state taxation and that it is specifically exempt from taxation by the County and Board of Education by virtue of KRS 132.200(4).

It further alleged that after it had filed its return of property with R. E. Morphew, Tax Commissioner, Mr. Morphew accepted the valuation of $60,000 and assessed the property at such value, but declined and refused to list the property in the classification above, and changed the classification and listed all of the property as manufactured products, and not as products in the course of manufacture, all of which it alleges was wrongfully and unlawfully done.

Both by allegation and proof, it appears that the plaintiff below purchases timber on the market and has it transported to its plant in Todd County where it is sawed into pieces of such dimensions as are commonly used by railroads for ties. These rough ties are then bored for spikes and bolts and adzed for fitting of tie plates, and trimmed as required. They are then stored under proper conditions for at least one year for seasoning, then creosoted, chemically treated and dried, after which time they are marketed for use as railroad ties. The defendants below sought to tax this property after it had been sawed, but before it had been manu-

factured, creosoted, and while plaintiff claimed it was in the process of manufacture.

The plaintiff below prayed that the rights of the parties be declared as follows:

"1. That the railroad ties manufactured by it in Todd County, Kentucky, constitute products in the course of manufacture and are raw material on hand for that purpose at all times prior to the completion of the process of creosoting.

"2. That all uncreosoted railroad ties belonging to the plaintiff at its plant in Todd County, Kentucky, are exempt from County taxation and from school taxation and from all local taxation by virtue of Section 132.200(4) of Kentucky Revised Statutes and that defendants each and all of them are without any right, power or authority to impose any tax or levy on the uncreosoted railroad ties of the plaintiff on behalf of the defendant County or the defendant School Board and that the defendant Sheriff has no right, power or authority to collect any such taxes from the plaintiff.

"3. That the declaration of rights as set forth in the paragraphs numbered 1 and 2 above apply both to such property which the plaintiff may have had on hand as of July 1st, 1943 and to all similar property in future years so long as Section 132.200 (4) of Kentucky Revised Statutes remains in force and effect."

The court below, after hearing defendants' demurrer, and considering the depositions taken, granted the petitioner's prayer.

Two questions are presented in this appeal. The first is a procedural question. The second is the factual question as to whether or not the appellee was actually engaged in manufacturing, and whether or not the untreated railroad ties at its plant were raw materials actually on hand for the purpose of manufacturing.

Appellants earnestly contend that the appellee, in failing to show by proper allegation that it had complied with KRS 133.120, 132.450 and paragraph 2 of 131.110, has not stated a good cause of action against the appellants, and, consequently, the general demurrer should have been sustained. KRS 133.120 sets out the provisions whereby a taxpayer may appeal to the Board of

Supervisors from an assessment made by the Tax Commissioner, and that an appeal may be taken from the action of that board to the circuit court, and thence to this court.

Appellants contend that no right of appeal lies to the circuit court in the absence of a hearing before the Board of Supervisors, and that an appeal directly to the circuit court from the acts of the Tax Commissioner was premature and not in any manner within the contemplation of the Legislature in passing the above Acts.

Appellants maintain further that it was incumbent upon appellee to allege and prove that it had followed the provisions of the statute in seeking redress, and, not having done so, the petition is fatally defective.

Appellants insist that the rule announced in the case of Ball, Sheriff, v. P. V. & K. Coal Co., 235 Ky. 445, 31 S. W. 2d 707, applies. It will be noted that in the Ball case an action was brought against the Sheriff and others to enjoin the collection of taxes based on an assessment for the year 1928, to the extent of the raise made by the County Tax Commissioner. In that case the question of notice was involved, wherein the Tax Commissioner increased the valuation over that listed by the taxpayer. That case is not on all fours with the instant case in that in the instant case the Tax Commissioner accepted the listing as made by the taxpayer, and undertook himself to pass upon the question of whether or not the property so listed was, or was not, property in the process of manufacture, and which he is maintaining to the present time is not in the process of manufacture. If it was rightly listed, and was property in the process of manufacture, then, the change made by the Tax Commissioner would be wrongfully and unlawfully done, in which event, as has been held by this court, a taxpayer may directly invoke the aid of an equity court to enjoin the collection of such taxes. More than that, it appears to us that the parties to this litigation were jointly striving to get an authoritative decision of the real question, namely; as to whether or not the property so listed was actually in the process of manufacture. Under the broad and general rule of jurisdiction, the court has jurisdiction in all cases of law and equity of which exclusive jurisdiction has not been vested in some other court.

Appellee contends that appellants waived objection by failure to file a special demurrer, and that such failure was a waiver of any jurisdictional objection. This appears to us to be a justifiable position and would be sufficient reason within itself for a disregard of the mere technical contention as made by appellants in that respect. Wedding v. First Nat. Bank, Inc., of Chicago, 280 Ky. 610, 133 S. W. 2d 931. This, when coupled with the fact that a pursuit of the procedure as set out in the Acts, above, and an adjudication on the part of the Board of Supervisors before an appeal to the circuit court on a purely judicial question as to whether or not the property so listed was manufactured articles or in the process of manufacture, which had been wrongfully assessed, convinces us that the court below properly assumed jurisdiction of the cause.

The remaining question to be decided is whether the property was in process of manufacture and therefore exempt from local taxation. No doubt exists as to the power of the Legislature to exempt manufacturers, manufacturing enterprises as a matter of policy primarily not to aid in the benefit of private persons for private ends, but for the benefit of the public at large by increasing resources of the state and its taxable property through the establishment of new industries. However, it is necessary for the claimant of exemption affirmatively to show itself to be within the class to which statutory exemption applies. In determining the propriety and rightness of the listing of property as being in the process of manufacture, we must bear in mind the basic meaning of the term "manufacture" and its related terms. 51 Am. Jur., Taxation, Section 592, we find these words: "Beyond this, however, where there is a finished product materially different in substance, general condition, or quality, which change has been wrought by human or artificial labor, and fits natural substances so that they become articles of value and use, it is generally held that the evolution constitutes manufacturing, * * *." Ayer & Lord Tie Co. et al. v. Commonwealth et al., 208 Ky. 606, 271 S. W. 693.

It is admittedly true that railroads will not and do not buy raw and untreated ties. The record discloses that the manufacturing process, after receipt of the raw ties, requires a full year of seasoning, after which there

must be a boring, adzing, trimming and branding of the ties, and then the treatment with creosote and other chemicals by an extremely high steam pressure, thus changing the very nature of the tie.

It is further evident that more than 99% of ties thus treated are sold to the railroads for their use.

It is further disclosed that the process of treatment is more expensive than that of sawing it into the raw tie. It appears that untreated ties are not marketable to railroads for such purposes, and that the manufacture of them is not completed until the creosoting has been completed; and that the process of creosoting is necessary and essential in the manufacture of railroad ties. It goes without argument that a number of years ago the creosoting process of ties was generally unknown, and that during that time the railroad tie was completely manufactured when it left the saw mill, but under the modern processing, such ties are not completed, or ready for the use intended, nor made into a salable product until after the final chemical treatment.

Reference is made to the Stearns case, Stearns Coal & Lumber Co. v. Thomas, 295 Ky. 808, 175 S. W. 2d 505, 507. In that case it was held that rough lumber is held by the company for sale, and that 36% thereof is sold in the form in which it comes from the saw mill, in which case the court exempted 64% from local taxation and allowed 36% to be taxed. These words are found in the Stearns case: "When raw material is converted by a factory into a finished product complete and ready for the final use intended, or so completed as that in the ordinary course of business it is ready to be put on the. market for sale to any person wishing to purchase it, then it ceases to be raw material and becomes a manufactured product."

In the instant case, less than 1% of the raw material is sold without having gone through the waiting, creosoting, boring, adzing, trimming and drying process.

We are of the opinion that the court rightly adjudicated that the appellee was engaged in manufacturing,

and that the untreated ties in its plant were raw materials actually on hand for the purpose of manufacture.

Judgment affirmed.