CROMWELL LOUISVILLE ASSOCIATES, Limited Partnership, Appellant

v.

COMMONWEALTH of Kentucky, Jefferson County Property Valuation Administrator, Appellee.

No. 2008–SC–000644–DG.

Supreme Court of Kentucky.

Sept. 23, 2010.

Thomas J. Luber, Mitzi Denise Wyrick, Sara Christine Veeneman, Wyatt, Tarrant, & Combs, LLP, Louisville, KY, Counsel for Appellant.

Lawrence E. Osterhage, Jefferson County Attorney's Office, Louisville, KY, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

## I. Introduction

This is an appeal from an opinion of the Court of Appeals reversing the Jefferson Circuit Court, which in turn reversed the Kentucky Board of Tax Appeals. The

Board of Tax Appeals dismissed Appellant's challenge to the Jefferson County Property Valuation Administrator's (PVA) 2001 property value assessment as untimely under KRS 133.120.

Because Appellant, Cromwell Louisville Associates, Limited Partnership, failed to comply with the administrative procedures mandated by KRS 133.120, we hold that the trial court erroneously reversed the Board of Tax Appeals' decision. We, therefore, affirm the decision of the Court of Appeals and remand this matter to the trial court with instructions that the court dismiss this action in accordance with the decision of the Board of Tax Appeals.

## II. Background

Because the parties stipulated most of the relevant facts and this case centers on statutory interpretation, we find a lengthy recitation of the facts unnecessary. This case originated from an administrative appeal based on the PVA's alleged overvaluation of Appellant's two commercial lots for the 2001 tax year. According to Appellant, the PVA valued its property at $3,040,600 for the 1998, 1999, and 2000 tax years. This amount ballooned to $7,733,640 for the 2001 tax year.[1] During the time the property was in receivership, the receiver paid an allegedly inflated 2001 property tax.[2]

Appellant first contested the PVA's 2001 tax assessment on April 30, 2002, claiming that the PVA drastically overvalued its property.[3] A conference between Appellant's counsel and a PVA representative failed to produce an agreeable solution regarding the 2001 tax assessment. Appellant subsequently filed an appeal to the Jefferson County Board of Assessment Appeals; however, the Board declined to address the 2001 tax assessment. Consequently, Appellant appealed the decision to the Kentucky Board of Tax Appeals.

During the pendency of the administrative appeal to the Kentucky Board of Tax Appeals, both parties agreed that if the Board found in Appellant's favor, the stipulated amount that Appellant overpaid in state and local tax for 2001 was $67,327.80.[4] Ultimately, the Kentucky Board of Tax Appeals declined to rule on Appellant's challenge to the 2001 assessment, finding that KRS 133.120 required Appellant to challenge the 2001 assessment during the 2001 inspection period.[5]

---

1. That assessment figure was the same for the 2002 and 2003 tax years.

2. The receiver, CB Commercial–Nicklies, Inc., paid the $94,153.20 2001 tax in January 2002.

3. Appellant apparently regained control of the property sometime after the receiver paid the 2001 property tax and before April 29, 2002; although the precise time is unclear.

4. The parties reached a settlement for the 2002 and 2003 tax years. For those tax years, the fair cash value of the property was reduced to $2,100,000. These tax years are not before us.

5. For a contextual frame, we briefly detail the steps a taxpayer undertakes when seeking to challenge a property assessment:

Notice: "If the property valuation administrator assesses any property at a greater value than that listed by the taxpayer or assesses unlisted property, the property valuation administrator shall serve notice on the taxpayer of such action. The notice shall be given by first-class mail or as provided in the Kentucky Rules of Civil Procedure." KRS 132.450(4)
Step 1: Conference with the PVA or its deputy during the inspection period. KRS 133.120(1)(a)
   a. Inspection period held the first thirteen (13) days of May, beginning with a Monday. KRS 133.045(1)
   b. During the week prior to the inspection period, the PVA shall publish, once, a display type advertisement containing, inter alia,:
     i. dates of the inspection period

The Jefferson Circuit Court thereafter reversed, finding that KRS 133.120 did *not* require the conference and appeal in the same year. The Court of Appeals then reversed, construing KRS 133.120 as requiring Appellant to contest the 2001 property assessment in 2001. Consequently, the court found that Appellant failed to comply with the mandatory administrative appeals procedures, preventing it from seeking a refund under KRS 134.590 for overpayment of taxes.

We also hold Appellant did not comply with the statutory requirements contained in KRS 133.120 and, therefore, affirm the Court of Appeals.

### III. Analysis

■ As Benjamin Franklin stated, "in this world nothing can be said to be certain, except death and taxes." Experience—and we might add, age—certainly confirm his wit and wisdom. In this Commonwealth, taxpayers can certainly expect annual property assessments, with taxes due near the end of every year. KRS 134.015. However, in this case, what is less certain is the applicable time period each taxpayer has to challenge this annual assessment.

Kentucky provides a statutorily codified right to inspect the real property tax rolls during the first thirteen days of May. KRS 133.045(1). In the case of an overvalued property assessment, the General Assembly authorized a refund of the resulting overpaid taxes. KRS 134.590. Notably, the refund provision contains an important condition precedent: a taxpayer must exhaust the administrative remedy procedures before seeking a refund. KRS 134.590(2), (6). With this framework in mind, we turn to Appellant's arguments.

Appellant's arguments hinge on the applicable time period in which a taxpayer must protest the PVA's property assessment. Appellant contends that KRS 133.120(1)(a)'s reference to the "inspection period," defined by KRS 133.045(1), restricts only the period of days, not the year, the initial conference and subsequent appeal challenging the property assessment can occur. KRS 133.120(1)(a) reads:

> Any taxpayer desiring to appeal an assessment on real property made by the property valuation administrator shall first request a conference with the property valuation administrator or his or her designated deputy. The conference shall be held prior to or during the inspection period provided for in KRS 133.045.

KRS 133.045(1) provides:

> The real property tax roll being prepared by the property valuation administrator for the *current year*, shall be open for inspection in the property valuation administrator's office for thirteen (13) days beginning on the first Monday in May of *each year* and shall be open for inspection for six (6) days each week, one (1) of which shall be Saturday . . .

ii. the "fact that any taxpayer desiring to appeal an assessment shall first request a conference with the property valuation administrator to be held prior to or during the inspection period." KRS 133.045(2)(d) (emphasis added).
iii. Instructions on the manner in which an aggrieved taxpayer may file an appeal after the conference.
*Step 2:* Appeal to County Board of Assessments. KRS 133.120(2)(a)

a. No later than one workday following the conclusion of the inspection period
*Step 3:* Appeal to the Kentucky Board of Tax Appeals. KRS 133.120(10)
*Step 4:* Appeal to the appropriate County Circuit Court. KRS 13B, KRS 131.370
*Step 5:* Appeal to the Kentucky Court of Appeals as a matter of right.
*Step 6:* Seek discretionary review in the Supreme Court of Kentucky.

(emphasis added). According to Appellant, the applicable year restriction for the initial conference and appeal is the two year statute of limitations found in KRS 134.590, the ad valorem refund statute. That statute reads, in pertinent part:

> (2) No state government agency shall authorize a refund unless each taxpayer individually applies for a refund within two (2) years from the date the taxpayer paid the tax. Each claim or application for a refund shall be in writing and state the specific grounds upon which it is based. Denials of refund claims or applications may be protested and appealed in accordance with KRS 131.110 and 131.340. No state government agency shall refund ad valorem taxes, except those held unconstitutional, unless the taxpayer has properly followed the administrative remedy procedures established through the protest provisions of KRS 131.110, the appeal provisions of KRS 133.120, the correction provisions of KRS 133.110 and 133.130, or other administrative remedy procedures.
>
> . . . .
>
> (6) No refund shall be made unless each taxpayer individually applies within two (2) years from the date payment was made. If the amount of taxes due is in litigation, the taxpayer shall individually apply for refund within two (2) years from the date the amount due is finally determined. Each claim or application for a refund shall be in writing and state the specific grounds upon which it is based. *No refund for ad valorem taxes, except those held unconstitutional, shall be made unless the taxpayer has properly followed the administrative remedy procedures established through the protest provisions of KRS 131.110, the appeal provisions of KRS 133.120, the correction provisions of KRS 133.110 and 133.130, or other administrative remedy procedures.*

KRS 134.590(2), (6) (emphasis added).

Appellant synthesizes these three statutes by contending that a taxpayer is in compliance with all the administrative procedures relating to assessment appeals, if he requests the initial conference (KRS 133.120(1)(a)) during the first thirteen days of May (KRS 133.045(1)), and within two years of paying the disputed taxes (KRS 134.590(2), (6)). Thus, Appellant contends it complied with all applicable statutes for the 2001 property assessment by requesting an initial KRS 133.120(1)(a) conference the next year on April 30, 2002. Furthermore, Appellant claims that if we do not reverse the Court of Appeals, taxpayers will only have thirteen days, during the inspection period, to challenge improper property tax assessments.

In its response the PVA adopts the Court of Appeals' reasoning. It avers that the only reasonable reading of the assessment appeal procedures defined in KRS 133.120, which references KRS 133.045's current year language, leads to the conclusion that each tax year stands on its own. Additionally, the PVA argues that KRS 134.590 is not a substitute for KRS 133.120. Consequently, the PVA argues that Appellant's failure to properly perfect its appeal of the 2001 tax bill in 2001 is fatal.

### A. Statutory Construction: Plain Language of the Statute

When interpreting a statute we adhere to the general and oft-repeated maxim that, "[o]ur main objective is to construe the statute in accordance with its plain language and in order to effectuate the legislative intent." *Cabinet for Families and Children v. Cummings*, 163 S.W.3d 425, 430 (Ky.2005).

A simple reading of KRS 133.120(1)(a)'s explicit reference to KRS 133.045 reveals the plain language requiring the taxpayer to request a conference during the inspection period. The inspection period, KRS 133.045(1), is explicitly framed in terms of the *current year*. Only the present year's tax roll is available for examination during the inspection period. As the Board of Tax Appeals appropriately stated, the taxpayer must request a conference during the inspection period for the "current year" tax rolls. Thus, in construing the statute's plain language to effectuate the legislative intent, we are unable to hold that the General Assembly intended the inspection period to be limited to only the stated period of *days*, and not the year, in which a taxpayer must appeal an unresolved property assessment.

The above conclusion is bolstered when considering Appellant's argument that the Court of Appeals' decision limits taxpayers to thirteen days to challenge an improper property tax.[6] Appellant's argument ignores KRS 133.120(9), a provision that allows a taxpayer, while disputing the assessment, to pay the property taxes based on his estimate of the property's value (claimed value), pending the resolution of the disputed property valuation. If the valuation is more than the claimed value, the taxpayer pays the difference plus the tax interest rate. The crucial factor within this provision is claimed value provision.

Pursuant to KRS 133.120()(d), the taxpayer presents the claimed value of his property *at the KRS 133.120(1)(a) conference*. Consequently, in order for this claimed value option to be available, the assessment conference must be held dur-ing the same year; if the conference did not occur until the next tax year, the taxpayer would have no claimed value figure to use when paying taxes while disputing the property valuation.

Therefore, we conclude that the plain meaning of KRS 133.120(1)(a), with its reference to the inspection period, mandates that the taxpayer request the conference during the current tax year.

## B. Statutory Interpretation: Avoid Absurd Results

We have long held "that a statute must not be interpreted so as to bring about an absurd or unreasonable result." *George v. Alcoholic Beverage Control Bd.*, 421 S.W.2d 569, 571 (Ky.1967). Appellant's contention that KRS 133.120 does not restrict the conference to the current tax year would bring about such an absurd result. When interpreting the statute without a year limit, the initial conference may occur during the first thirteen days of *any* May.[7] Based on this reading, a taxpayer could theoretically request a conference with the PVA years after the assessment in question, so long as it is within the inspection period. Furthermore, under the compulsory language of KRS 133.120, the PVA would have no choice but to attend and explain "the procedures followed in deriving the assessed value for the taxpayer's property." KRS 133.120(1)(c). Thus, as is evident in the above logic, construing the statute's timeframe for the conference to a period of days without a limitation to the current year produces an absurd result, something this Court has declined to allow. *See Floyd v. Gray*, 657 S.W.2d 936, 941 (Ky.

6. Notably, the inspection period for the 2001 tax year ended on June 29, 2001. This extension was presumably pursuant to the second sentence of KRS 133.045(1), which allows the Department of Revenue to order a reasonable extension of time for the inspection period of the tax roll.

7. The inspection period defined by KRS 133.045(1).

1983) (Leibson, J., dissenting) ("We should not suppose that the legislature intended to be intentionally illogical, nor should we interpret the statute to bring about an obviously illogical result.").

### C. KRS 134.590's Statute of Limitations Inapplicable

Appellant's proposed solution to the above quandary resulting from construing the inspection period without a current year limitation is to import the statute of limitations from the refund statute, KRS 134.590. Disregarding the plain language of the statute and trying to take part of another statute to extend the time line only perpetuates the absurdity. KRS 133.120 and 134.590 apply to patently different situations: the former is applicable to administrative proceedings for challenging the PVA's *assessment* of property value, while the latter provides for *refunds* of ad valorem or unconstitutional taxes.[8] We recognize the fundamental distinction between a statute elucidating all mandatory administrative procedures relating to the *initial* assessment and the statute of limitations for applying for a refund, the ultimate *remedy*. Consequently, we decline Appellant's invitation to misconstrue the administrative procedures relating to the assessment statute.

Furthermore, the references to KRS 133.120 within KRS 134.590(2) and (6) do not change the analysis; rather, it merely establishes a prerequisite to applying for a refund, insuring taxpayers do not circumvent the administrative procedures. Notably, KRS 133.120(1)(a) does not refer to KRS 134.590(2) or (6) for the time period within which a taxpayer must request a conference and appeal. However, KRS 133.120(1)(a) does explicitly reference KRS

133.045 for the applicable time frame, which, as previously stated, unambiguously applies a current year framework to the inspection period. We have oft-stated, "[w]e are not at liberty to add or subtract from the legislative enactment." *Commonwealth v. Harrelson*, 14 S.W.3d 541, 546 (Ky.2000). Accordingly, we cannot subtract the reference to KRS 133.045 from KRS 133.120(1)(a), and substitute KRS 134.590(2) or (6) in its place.

### D. Procedural Due Process

■ Appellant also contends that it has a constitutional right to a refund. Appellant claims that it is entitled to obtain a pre-deprivation determination or, alternatively, the Commonwealth must provide meaningful backward looking relief to rectify any unconstitutional deprivation. *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco*, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990). Additionally, Appellant contends that the Supreme Court of the United States has also held that states may not "bait and switch" by holding out what plainly appears to be a post-deprivation remedy and then, after taxes are paid, declare no such remedy exists. *Reich v. Collins*, 513 U.S. 106, 115 S.Ct. 547, 130 L.Ed.2d 454 (1994). Appellant claims that this is exactly what occurred when it was prevented from applying for a refund. We disagree.

We addressed Appellant's first claim in regards to pre- and post-deprivation review above. As previously noted, KRS 133.120(9) permits the taxpayer to pay property taxes based on the claimed value of his property, pending a final valuation determination. Thus, there can be no deprivation for taxes not yet paid. We also find Appellant's citation to *Reich* inappo-

---

**8.** Although not dispositive, the title of each chapter is indicative of the clear delineation between the chapters. KRS 133 is entitled, "Supervision, Equalization, And Review Of Assessments;" KRS 134 is entitled, "Payment, Collection, And Refund Of Taxes."

site. In that case, Georgia's tax refund statute clearly provided for refunds, yet the Court found that Georgia reconfigured its scheme, unfairly, in midcourse to prohibit taxpayers from receiving refunds for disputed taxes. *Reich,* 513 U.S. at 110, 115 S.Ct. 547. In the present case, Appellant admits the statutory scheme governing refunds has remained unchanged since 1992. Thus, there is no "bait and switch" in the refund statute. Appellant's claim of due process deprivation is disingenuous, as we find that nothing unfairly constraining a taxpayer's right to receive a refund. Simply put, the taxpayer must comply with the statutory language, stated in KRS 134.590, which requires the exhaustion of administrative remedies before applying for a refund.

### E. Other Assertions

The remainder of Appellant's arguments are alternative theories under which KRS 134.590's two year time frame is applicable to the assessment appeal procedures of KRS 133.120. Appellant's arguments however, collapse with our finding that KRS 133.120(1)(a)'s assessment conference and appeal shall occur within the same tax year. Consequently, we succinctly discuss and dismiss the remainder of Appellant's alternative arguments.

Appellant's general statutory construction argument again attempts to combine two statutes that bear only a loose connection. We find this argument unpersuasive for the reasons previously stated. Next, Appellant's argument regarding the legislative history is unpersuasive, largely due to Appellant's failure to include any legislative history supporting its assertions. Finally, Appellant rehashes the argument that it exhausted its administrative remedies under KRS 134.590, entitling it to apply for a refund. As we found above, Appellant failed to request the assessment conference pursuant to KRS 133.120(1)(a) during the same tax year, thereby failing to comply with KRS 133.120. Consequently, Appellant cannot seek a refund under KRS 134.590 as it did not exhaust its administrative remedies.

### IV. Conclusion

For the above reasons, we affirm the Court of Appeals' decision and remand this matter to the trial court with instructions that the court dismiss this action in accordance with the decision of the Kentucky Board of Tax Appeals.

MINTON, C.J.; CUNNINGHAM, NOBLE, SCHRODER, and VENTERS, JJ., concur. ABRAMSON, J., not sitting.