DEPARTMENT OF REVENUE, FINANCE AND ADMINISTRATION CABINET, Commonwealth of Kentucky, Appellant

v.

COX INTERIOR, INC., Appellee.

No. 2010–SC–000794–DG.

Supreme Court of Kentucky.

June 20, 2013.

Douglas M. Dowell, Counsel for Appellant.

Steven Lowell Lenarz, James Lee Deckard, Lexington, Michael David Kalinyak, Counsel for Appellee.

Deborah Tully Eversole, Timothy Joseph Eifler, Louisville, Counsel for Amicus Curiae Bluegrass Institute for Public Policy Solutions, Inc.

Jennifer Yue Barber, Mark Francis Sommer, Louisville, Counsel for Amicus Curiae Kentucky Chamber of Commerce, Inc., and National Federation of Independent Business.

Opinion of the Court by Justice ABRAMSON.

The Department of Revenue audited Cox Interior, Inc., for the period 2001 through 2004 and determined that Cox Interior owed $151,943.51 in ad valorem taxes on tangible personal property. Cox Interior paid the full amount without protest and months later filed a refund claim for a portion of the taxes, alleging it had overpaid because the Department had improperly classified certain machinery. The Department denied the refund claim because Cox Interior paid without protest. The Kentucky Board of Tax Appeals (KBTA), ruling in favor of the taxpayer, reversed, and both the Franklin Circuit Court and the Court of Appeals affirmed.

We granted the Department's motion for discretionary review to consider the requirements a taxpayer must satisfy when seeking a refund of tangible personal property taxes under Kentucky Revised Statute (KRS) 134.590 in light of our recent decision in *Cromwell Louisville Associates, LP v. Commonwealth*, 323 S.W.3d 1 (Ky.2010). In *Cromwell*, we held that a taxpayer's compliance with administrative remedies by properly protesting a real property assessment was a condition precedent to seeking a tax refund. Because Cox Interior properly followed the appropriate administrative remedies in this case, we affirm the decision of the Court of Appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are undisputed. In 2006, the Department audited Cox Interior's compliance with ad valorem tax laws for tangible personal property for the tax years 2001 through 2004. The Department determined that Cox Interior had omitted certain tangible personal property from its tax returns during the relevant years, resulting in a bill of $151,943.51. Cox Interior did not protest the new assessments and, in March 2006, paid them in full with the exception of the assessed penalties, which the Department waived.

Cox Interior later determined that the Department's audit improperly listed manufacturing machinery on the non-manufacturing schedule of the return. This was important because manufacturing machinery is subject to a more favorable tax rate than non-manufacturing machinery and is exempt from local tax. Because of this discovery, Cox Interior filed for a refund under KRS 134.590 in July 2007, sixteen months after it had fully paid the new assessments from the Department's audit. Cox Interior alleged that the Department improperly assessed $44,717 in tangible property taxes. The Department denied Cox Interior's refund claim strictly on procedural grounds, stating that Cox Interior had failed to follow the applicable administrative procedure. The Department contended that Cox Interior had to protest the assessment pursuant to KRS 131.110 within forty-five (45) days of receiving notice of the tax due in order to preserve its right to a refund.

Cox Interior appealed the Department's final ruling to the KBTA, following proper procedure under KRS 131.110 and 131.340. Cox Interior stressed that it had fully complied with KRS 134.590 and the relevant administrative procedures for a tax refund. The Department disagreed and moved for summary judgment, again arguing that Cox Interior was required to protest the assessment before paying the taxes in order to have a valid claim for a refund.

Ruling in favor of Cox Interior, the KBTA relied heavily on *Revenue Cabinet v. Castleton*, 826 S.W.2d 334 (Ky.App.1992), and concluded that the refund claim was timely filed and was not waived by Cox Interior's failure to protest the Department's audit assessment.

The Department appealed to the Franklin Circuit Court. The Franklin Circuit Court, also relying primarily on *Castleton*, agreed with the KBTA and held that Cox Interior had properly exhausted administrative remedies. Further, the Franklin Circuit Court noted that the Department's view of KRS 134.590 was improper and erected unnecessary procedural obstacles to Cox Interior's obtaining a refund. The circuit court concluded that requiring Cox Interior to protest the assessment in order to preserve the right to file a refund claim exceeded what the doctrine of exhaustion of administrative remedies can or should require.

The Department appealed and, consistent with the KBTA and the circuit court, the Court of Appeals found *Castleton* to be controlling and held that Cox Interior was not required to protest the assessment in order to preserve the claim for a refund. Rather, the Court of Appeals found that Cox Interior fully complied with KRS 134.590 by submitting its refund claim within two years and then protesting the Department's denial of that refund claim. The Court of Appeals noted that the Department's reading of KRS 134.590 would require Cox Interior to exhaust not one, but two administrative remedies.

We granted discretionary review because of an alleged conflict between *Cromwell* and the decision of the Court of Appeals in the present case.[1] Finding the Court of Appeals decision consistent with both *Cromwell* and our reading of KRS 134.590, we affirm.

## ANALYSIS

■ Because the facts are undisputed, this is a case of statutory interpretation; specifically, the interpretation of KRS 134.590(2) and the steps' a taxpayer must take to receive a refund from the Department. Statutory interpretation raises pure questions of law, so our review is *de novo*, meaning we afford no deference to the decisions below. *Commonwealth v. Love*, 334 S.W.3d 92, 93 (Ky.2011).

In *Shawnee Telecom Resources, Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky.2011), we stated the rules of statutory construction as follows:

> In construing statutes, our goal, of course, is to give effect to the intent of the General Assembly. We derive that intent, if at all possible, from the language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration. *Osborne v. Commonwealth*, 185 S.W.3d 645 (Ky.2006). We presume that the General Assembly intended for the statute to be construed as a whole, for all of its parts to have meaning, and for it to harmonize with related statutes. *Hall v. Hospitality Resources, Inc.*, 276 S.W.3d 775 (Ky.2008); *Lewis v. Jackson Energy Cooperative Corporation*, 189 S.W.3d 87 (Ky.2005). We also presume that the General Assembly did not intend an absurd statute or an unconstitutional one. *Layne v. Newberg*, 841 S.W.2d 181 (Ky. 1992).

■ Thus, where the meaning is plain we are to apply a statute as written, give

---

1. Our decision in *Cromwell* was published just short of two months before the decision by the Court of Appeals in this case.

meaning to all parts of the statute and avoid absurd results. With those rules in mind, we examine the statute before us, stopping first to examine the assessment protest procedure which the Department maintains is preliminary to obtaining a tax refund.

## I. THE ASSESSMENT–PROTESTING TAXPAYER.

■ As discussed below, Kentucky law has long recognized a distinction between ad valorem tax protests challenging the assessor's valuation of the taxed property and refund claims challenging the legality of the assessed tax. Because the Department's reading of KRS 134.590 would, in effect, do away with that distinction, it is helpful, before turning to the ad valorem tax refund statute at the center of this dispute, to understand the tax protest process. The expedited procedure available to taxpayers comes from KRS 132.486, which, in conjunction with KRS 131.110, provides for appeals of issues related to the assessed value of taxable personal property.[2] Under this procedure, the taxpayer, having been notified of the tax, has forty-five (45) days in which to pay any uncontested amount thereof and to file a written protest with the Department concerning the balance. As the statute states, "[t]he taxpayer shall pay all ... taxes due on *the valuation* which the taxpayer claims as the *true value....*" KRS 132.486(3) (emphasis supplied). Notably, the tax notice issues, not from the local property valuation administrator (PVA), but from the Department which is charged with developing and administering "a centralized ad valorem assessment system for tangible personal property." KRS 132.486(1). If not satisfied with the Department's final

ruling, the taxpayer may appeal to the Kentucky Board of Tax Appeals. KRS 131.110. Although resort to the courts may be had following a ruling by the Board, KRS 131.340, KRS 131.370, this procedure is meant to be relatively informal and expeditious. Moreover, "[w]hen *the valuation is finally determined* upon appeal, the taxpayer shall be billed for any additional tax and interest at the tax interest rate ... from the date the tax would have become due if no appeal had been taken." KRS 132.486(3) (emphasis supplied). All of the aforementioned statutes regarding personal property tax assessments, protests and appeals are contained in KRS Chapter 131 entitled "Department of Revenue" or KRS Chapter 132 entitled "Levy and Assessment of Property Taxes." For ease of reference, the taxpayer who follows this assessment protest route will be referred to hereafter as the "Assessment–Protesting Taxpayer."

## II. KRS 134.590—THE REFUND–SEEKING TAXPAYER.

The focal point of this case is KRS 134.590, the refund statute applicable to ad valorem taxes and those held unconstitutional and, not surprisingly, it is in a separate chapter, KRS Chapter 134, entitled "Payment, Collection and Refund of Taxes." KRS 134.590 provides in relevant part:

(1) When the appropriate state government agency determines that a taxpayer has paid ad valorem taxes into the state treasury when no taxes were due or has paid under a statute held unconstitutional, the state government agency which administers the tax shall refund the money, or cause it to be refunded, to the person who paid the tax. The state

---

**2.** The tax assessment protest procedure relevant to real property taxes, KRS 133.120, is

discussed below.

government agency shall not authorize a refund to a person who has paid the tax due on any tract of land unless the taxpayer has paid the entire tax due the state on the land.

(2) No state government agency shall authorize a refund unless each taxpayer individually applies for a refund within two (2) years from the date the taxpayer paid the tax. Each claim or application for a refund shall be in writing and state the specific grounds upon which it is based. Denials of refund claims or applications may be protested and appealed in accordance with KRS 131.110 and 131.340. No state government agency shall refund ad valorem taxes, except those held unconstitutional, unless the taxpayer has properly followed the administrative remedy procedures established through the protest provisions of KRS 131.110, the appeal provisions of KRS 133.120, the correction provisions of KRS 133.110 and 133.130, or other administrative remedy procedures.

This rather convoluted statute is best understood by a careful reading of each sentence. Subsection(1) is relatively straightforward. If the money was paid into the state treasury, as it was in this case, the request is to be addressed to "the appropriate state government agency," and if the "agency determines that a taxpayer has paid ad valorem taxes into the state treasury when no taxes were due ... the state government agency which administers the tax shall refund the money, or cause it to be refunded, to the person who paid the tax." KRS 134.590(1). Subsection (1) sets the stage for subsection (2), which explains how the refund process works. These first two subsections are the only parts of the refund statute relevant to state ad valorem taxes, with subsections (3) through (7) focusing on ad valorem taxes assessed by a city, urban-county, county, school district, consolidated local government or special taxing district.

The first sentence of KRS 134.590(2) establishes that the state will not make a refund unless the taxpayer has individually applied for that refund within two years from the date the tax was paid. The second sentence dictates the form of the refund request, namely in writing and stating the specific grounds on which it is based. In the third sentence, the taxpayer is informed that a denial of a refund "may be protested and appealed in accordance with KRS 131.110 and KRS 131.340." This sentence is significant because it dictates the next step for the taxpayer who does not receive the desired refund. In short, it identifies his administrative remedy. For ease of reference, this taxpayer who is seeking a refund is hereafter referred to as the "Refund–Seeking Taxpayer."

The two statutes pursuant to which the Refund–Seeking Taxpayer must proceed administratively, KRS 131.110 and 131.340, have already been referenced above in the discussion of the assessment protest procedure. KRS 131.110(1) literally allows the taxpayer to protest a tax assessment within forty-five (45) days of the date of notice of the "tax assessed." However, the taxpayer who has been denied a refund under KRS 134.590, the Refund–Seeking Taxpayer, does not come there, *i.e.,* to KRS 131.110, to protest an assessment, but rather to protest the denial of a refund. For that taxpayer, the .110 process still works. Under subsection (1), the Refund–Seeking Taxpayer has forty-five (45) days from the denial of the refund to protest the denial, and under subsection (2) he or she is entitled to a conference with the Department. The Department issues a final ruling that outlines the "issues in controversy," explains the Department's "position thereon," and informs the taxpayer how to prosecute an appeal to the Board of Tax Appeals. KRS 131.110(3)–

(5). Subsection (5) informs the taxpayer that the appeal is pursuant to KRS 131.340, the second statute referred to in the third sentence of KRS 134.590(2) as the administrative remedy for the Refund–Seeking Taxpayer. Looking at KRS 131.340, it is clear that the Refund–Seeking Taxpayer must appeal to the Board of Tax Appeals within thirty (30) days of the date of the mailing of the Department's final ruling or order. When the Board finally rules, then the administrative process is complete. Judicial review of the Board's opinion may be sought in circuit court pursuant to KRS 131.370 and, of course, any eventual circuit court ruling may be appealed to the Kentucky Court of Appeals.

Thus, the Refund–Seeking Taxpayer exhausts his administrative remedies by securing a ruling on his refund request from the Department, protesting that denial under KRS 131.110 and, if still denied a refund, appealing to the Board of Tax Appeals under KRS 131.340. Judicial review is available as well. The Department insists that this is not the proper route—that the Refund–Seeking Taxpayer has no right to seek a refund unless he was first an Assessment–Protesting Taxpayer. Under its construct, the Refund–Seeking Taxpayer does not really have two years to seek a refund, as proclaimed in the opening sentence of KRS 134.590(2), because there was a forty-five (45) day window to protest the assessment prior to payment that was preliminary to the refund process just outlined. The Department's position derives from its interpretation of the last sentence of KRS 134.590(2), the one sentence not yet addressed but that is totally consistent with the orderly process outlined above.

## III. KRS 134.590(2)—THE IMPORT OF THE DIRECTIVE IN THE FINAL SENTENCE.

■ The final sentence of KRS 134.590(2) states: "No state government agency shall refund ad valorem taxes, except those held unconstitutional, unless the taxpayer has properly followed the administrative remedy procedures established through the protest provisions of KRS 131.110, the appeal provisions of KRS 133.120, the correction provisions of KRS 133.110 and 133.130, or other administrative remedy procedures." In the process outlined above, the Refund–Seeking Taxpayer has satisfied the requirements of this last sentence fully. He properly followed the protest provisions of KRS 131.110 by protesting the Department's denial of his refund; he exhausted his administrative remedies through the Board of Tax Appeals. The Department ignores the simple fact that the last sentence is a directive. It directs the appropriate state agency which is asked to refund taxes (here the Department) to determine whether applicable administrative remedies have been exhausted. *Exactly what those administrative remedies are may vary depending on the nature of the controversy, i.e., the basis for the taxpayer's challenge.*

If the Refund–Seeking Taxpayer is actually challenging the assessment of real property there is a specific statute for that, KRS 133.120, and thus that particular statute is listed in KRS 134.590(2) as an example of an administrative remedy that must be exhausted. This particular statute was the one addressed recently in *Cromwell Louisville Associates, LP v. Commonwealth*, 323 S.W.3d at 1, a case discussed more fully below. Similarly, if the Refund–Seeking Taxpayer is just seeking correction of a clerical error or claiming that he was erroneously charged with tax on property not owned by him, then KRS 133.110 and KRS 133.130, respectively, are provisions that offer the appropriate administrative remedies. So, those

two statutes are also identified in KRS 134.590(2). Another available administrative remedy is the one first noted above for the Assessment–Protesting Taxpayer, KRS 132.486, which relates to the valuation of personal property. If a taxpayer is challenging the valuation of personal property that remedy is available and can logically be understood to be encompassed by the closing words of KRS 134.590(2), "... or other administrative remedy procedures."

In this case the Refund–Seeking Taxpayer, Cox Interior, is not challenging the valuation of real or personal property, not seeking correction of a clerical error and not claiming that it is has been erroneously charged with taxes on property it does not own. Instead, Cox Interior maintains that manufacturing machinery it owns was improperly classified and thus taxed at a higher rate than applicable under Kentucky law. The essence of the refund claim is not the value of the property, the whole purpose for challenging an assessment as to valuation via KRS 132.486 for tangible personal property or via KRS 133.120 for real property. Yet, the Department contends the last sentence of KRS 134.590 precludes Cox Interior's ad valorem tax refund claim unless it previously brought the claim under the expedited, forty-five (45) day assessment protest procedure. We reject this reading urged by the Department of Revenue. It cannot be what the General Assembly intended, since the obvious effect with respect to ad valorem tax refund claims like Cox Interior's is to repeal the refund statute, with its two-year limitations period, and to subject all such claims to the forty-five (45) day limitations period applicable to valuation challenges.

To reiterate, the opening sentence of KRS 134.590(2) says unequivocally that the Refund–Seeking Taxpayer has two years to act. With the Department's reading, that two-year limitations period would be illusory in all cases except those involving unconstitutional taxes—in short, there would only be forty-five (45) days in which to preserve the right to a refund. Assuming arguendo, the Department's position was correct, the Taxpayer would use the protest provisions (within forty-five (45) days, of course), carry that process through to its logical conclusion, pay the tax and presumably then have two years to seek a refund of the tax paid. But, what would be left to dispute at that point? If the Taxpayer's ground for claiming that it has paid too much is addressed through the assessment protest and the tax owed is determined and paid, there is nothing left to dispute. The Taxpayer's issues— whether valuation, property classification as in this case or anything else—would be raised and "litigated" through the assessment protest procedure. Those issues would be finally decided: there would not be a second bite at the apple. So, the Department's reading does completely read out of the statute the two-year limitations period because the Taxpayer who has been forced to go through the assessment protest process has litigated all there was to dispute.[3]

Even assuming there was something left to dispute, the result is absurd. Under this strained interpretation, the Taxpayer must go through the assessment protest procedure (regardless of the nature of his grounds for a refund), complete that procedure at least through the administrative

---

**3.** The Department points out that the two-year period would be relevant to taxes held unconstitutional, but that raises an obvious question. The statute, on its face is applicable to two types of refunds: "ad valorem taxes [paid] into the state treasury when no taxes were due or ... paid under a statute held unconstitutional...." KRS 134.590(1).

review process ending with the Board of Tax Appeals, then pay the taxes and start over with a refund request (within two years), going again to the Department (KRS 131.110) and the Board of Tax Appeals (KRS 131.340). This is the only way to give meaning, under the Department's approach, to all of KRS 134.590(2), which references protesting "denials of refund claims" under KRS 131.110 and 131.340. In short, the Refund–Seeking Taxpayer would, under the Department's interpretation of KRS 134.590, make two trips through the administrative process before final resolution. Of course, as pointed out above, there would really be nothing to litigate on the second trip through the process because everything would have been addressed through the assessment protest. In short, the first three sentences of KRS 134.590(2) would be essentially meaningless for taxpayers seeking the refund of ad valorem taxes "when no taxes were due."

■ By contrast, the reading of KRS 134.590 advanced above gives meaning to all parts of KRS 134.590(1) and (2), including the last sentence of subsection (2), while preserving the right of an ad valorem taxpayer to seek a refund within two years with the important caveat that if the taxpayer disputes valuation of the properly, alleges a clerical error or disclaims ownership of the properly, then the specialized protest procedures that cover those circumstances must be complied with first. *See* KRS 132.486 (tangible personal properly assessments); KRS 133.120 (real property assessments); KRS 133.110 (clerical errors); and KRS 133.130 (property not owned by taxpayer). Where, as here, the refund claim involves the classification of property and application of the appropriate tax rate, none of the specialized administrative procedures apply and the

Refund–Seeking Taxpayer has two years from the date the tax was paid.

## IV. THE DEPARTMENT'S TAXPAYERS' RIGHTS BROCHURE AND REGULATIONS.

The Department itself has not represented to Kentucky taxpayers such as Cox Interior that they must first use the assessment protest provisions before they can seek a refund, regardless of the ground for the refund. Since 1990, the "Kentucky Taxpayers' Bill of Rights" has required the Department to publish "in simple and nontechnical language" an explanation of the "procedures, remedies, and the rights and obligations of taxpayers and the department." KRS 131.081(2). The Department's brochure, "Your Rights as a Kentucky Taxpayer," does not inform taxpayers paying tangible personal property tax that they lose the statutory two-year refund right under KRS 134.590 if they do not first protest the assessment before payment.[4] Indeed, that brochure is entirely consistent with the statutory construction outlined herein. The two-page document, under "Protest and Appeal Procedures," states in relevant part:

> If you receive a notice of assessment, a Notice of Tax Due for tax or penalty or *if the DOR notifies you that a tax refund or credit has been reduced or denied,* a license or permit revoked or denied, or other determination made by the DOR, you have the right to protest. To do so:
>
> submit a written protest within 45 days of the original Notice of Tax Due, *notice of refund reduction or denial,* revocation or denial of a license or permit, or other DOR determination.

(emphasis supplied). Thus the Department's own publication tells the taxpayer

4. This brochure is available online at *http://* *www.revenue.ky.gov.*

whose "tax refund ... has been ... denied" that he has forty-five (45) days to protest the denial, as outlined above. There is no mention of refunds being unavailable unless the tax was first protested within forty-five (45) days of the notice of assessment. Notably, the brochure does inform taxpayers challenging the valuation of real property that they must first comply with the real property assessment protest procedures. It states: "*NOTE:* The above protest and appeal procedures do not apply for real property which is valued by the local property valuation administrator (PVA). Contact the local PVA for information about how to appeal the valuation of real property."

Similarly, the Department's regulations do not inform taxpayers that the two-year refund right is not available unless the taxpayer protests the tangible personal property tax assessment before paying the tax. Perhaps most telling is 103 KAR 1:010, entitled "Protests and Appeals." Section 1 is entitled "Protest—Assessments" while Section 2 is entitled "Protests—Refund or Credit Denials." Section 2 provides:

Section 2. Protests—Refund or Credit Denials.

(1) Taxpayers will also be notified by mail of disallowance or partial disallowance of any refund or credit claim including a refund or credit requested upon any return.

(2) A taxpayer may protest such disallowance or partial disallowance by written protest filed with the Revenue Cabinet, within forty-five (45) days of the disallowance. Procedures governing protests and hearings for refunds and credits are the same as for assessments.

The regulation fits perfectly with the statutory construction advanced herein. The Taxpayer seeks a refund and then protests any denial within forty-five (45) days because "[p]rocedures governing protests and hearings for refunds and credits are the same as for assessments."

## V. THE NECESSITY OF RAISING VALUATION ISSUES WITH THE ASSESSOR BY PROTEST.

These regulations and the brochure, produced by the Department, are not surprising because historically Kentucky has always recognized a distinction between a refund request raising issues such as the property classification issue raised by Cox Interior and an assessment protest regarding the valuation of the property being taxed. *Revenue Cabinet v. Castleton, Inc.,* 826 S.W.2d at 334. It has long been the law that allegedly excessive property valuations may be challenged only by way of an assessment protest brought before the assessor. *Johnson v. Fordson Coal Co.,* 213 Ky. 445, 281 S.W. 472 (1926), *Ballard County v. Citizens State Bank,* 261 S.W.2d 420 (Ky.1953); *Parrent v. Fannin,* 616 S.W.2d 501 (Ky.1981). In *Cromwell Louisville Assocs., L.P. v. Commonwealth,* 323 S.W.3d at 1, we recently applied this rule to a claim of excessive real property valuation.

In *Cromwell,* the taxpayer, on April 30, 2002, contested the PVA's 2001 assessment of two commercial lots as "drastically overvalued." 323 S.W.3d at 2. This Court held that KRS 133.120, the real property assessment protest statute, required the taxpayer to contest the 2001 assessment during the 2001 inspection period, not the next year. In an effort to save itself from the failure to timely protest the assessment, the taxpayer pointed to the two-year period for refunds in KRS 134.590, essentially trying "to import the statute of limitations from the refund statute, KRS 134.590." *Id.* at 6. This Court noted that the assessment process and refund procedure involved "patently different situations" and

disallowed the taxpayer's attempt to mix the two statutes. *Id.* In doing so, the *Cromwell* Court noted that the last sentence of KRS 134.590(2) requires the exhaustion of administrative remedies and KRS 133.120, the real property assessment protest statute, is specifically listed as one of those remedies. Because that taxpayer failed to follow the requirements of KRS 133.120 in a timely manner, its assessment protest failed.

Although in *Cromwell* we addressed only a claim challenging an allegedly excessive real property valuation, a challenge our law has long required be brought as an assessment protest, the Department purports to extrapolate from *Cromwell* and the last sentence of KRS 134.590(2) a rule to the effect that all ad valorem tax challenges are likewise subject to the assessment protest rule. That is not what our law has been, and is not what the "no refund unless" directive in the last sentence of KRS 134.590(2) means. Our law has distinguished, rather, between, on the one hand, the factual and discretionary aspects of an assessment, such as property valuation and property ownership, and, on the other hand, any legal grounds for challenging a tax bill, such as, in this case, the appropriate classification of property for the application of different tax rates. Challenges to the former have been subject to the assessment-protest rule, but challenges to the latter have not been. *Todd County v. Bond Bros.*, 300 Ky. 224, 188 S.W.2d 325 (1945); *Ballard County v. Citizens State Bank,* 261 S.W.2d at 420; *Iroquois Post, A.L. v. Louisville,* 279 S.W.2d 13 (Ky.1955). The "no refund unless" provision in the last sentence of KRS 134.590(2), is intended to incorporate this well-settled distinction, not to obliterate it.

## CONCLUSION

In sum, meaning can be given to every sentence in KRS 134.590(2) without insisting that every ad valorem taxpayer who seeks a refund protest the assessment before paying. If the Taxpayer is challenging a valuation, contending there is a clerical error or claiming he does not own the property being taxed, then the specific administrative protest procedures applicable to those types of issues must be followed. For other issues, such as Cox Interior's manufacturing machinery classification issue, the Refund–Seeking Taxpayer exhausts his administrative remedies by protesting the denial of the refund "in accordance with KRS 131.110 and KRS 131.340." KRS 134.590(2). By doing that, the Refund–Seeking Taxpayer has complied with the final sentence of KRS 134.590(2), and the Department "shall refund [any] ad valorem taxes" that are not due under Kentucky law. To understand the reference to KRS 131.110 in the last sentence of KRS 134.590(2) otherwise, as subjecting all ad valorem tax challenges to the assessment protest rule regardless of whether there is a valuation issue, is effectively to nullify the ad valorem tax refund provisions of KRS 134.590, and to render that statute not a vital measure for taxpayer protection, but a trap whereby taxpayers are lulled into forfeiting their legitimate refund claims. For the reasons stated, that strained construction was clearly not the intent of our General Assembly.

The Court of Appeals opinion is affirmed, including the remand of this matter to the Department of Revenue for consideration of the merits of Cox Interior's refund claim.

All sitting. All concur.